HAYES v. HARRISON et al.

(Supreme Court, Appellate Division, First Department. November 4, 1910.)

WILLS (§ 603*)—CONSTRUCTION—ESTATE DEVISED—FEE-SIMPLE ESTATES.

> A will provided that testator gave and "bequeathed" to a widow, who had been his housekeeper, "all my real estate, with the buildings and appurtenances," and also certain personalty, together with $1,000 in cash and the interest for life upon moneys invested in two mortgages owned by testator, "to have and to hold in her own right and to her own use so long as she may live unmarried"; the money and mortgages to be kept on investment during the lifetime of said "widow," she to receive the income thereof, and in case she should marry again "all the property herein bequeathed to her" to revert to his heirs at law. The second clause provided that at the death of such widow the moneys secured by the mortgages should be distributed to testator's heirs at law. The two mortgages referred to constituted a substantial part of the estate. Held, that the widow took a fee simple on condition in testator's realty, which upon her death without having remarried became a fee absolute; the remainder, which was in the meantime in the heirs at law, being a conditional limitation.
>
> [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1351–1359; Dec. Dig. § 603.*]

Ingraham, P. J., and Laughlin, J., dissenting.

Appeal from Special Term, New York County.

Action by John Hayes against Florence Harrison and others, impleaded with James Burrows. From a judgment dismissing the complaint, and for two of the defendants, plaintiff and the impleaded defendant appeal. Affirmed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, MILLER, and DOWLING, JJ.

Harold Swain, for appellants.
Bela D. Eisler, for respondents.

DOWLING, J. This appeal is taken by the plaintiff and by James Burrows, one of the defendants, from a final judgment in a partition action in favor of the defendants Theiss and Campbell, dismissing the

complaint upon the merits, and adjudging that the plaintiff and the remaining heirs at law of Ralph Burrows, deceased, have no title, vested, contingent, or otherwise, in the real property set forth in the complaint, nor any interest therein.

The question involved herein is whether the interest of Susan Bray under the following will is a life estate only, or whether it was a fee. She was the housekeeper for Ralph Burrows, and lived in his household during the lifetime of his wife and while the latter lived there, as well as after the wife's death. Susan Bray's children also lived in the same house. Ralph Burrows died at the city of New York August 10, 1882, leaving a last will and testament, dated January 29, 1879, as follows:

"In the name of God, amen.

"I, Ralph Burrows, of Morrisania, New York City, county and state of New York, do hereby make, publish, ordain and declare this my last will and testament; that is to say:

"First.—I give and bequeath to Susan Bray, widow of Richard Bray, all my real estate with the buildings and appurtenances, together with my burial plot in Bensonia Cemetery situate in Morrisania aforesaid, together with my household furniture and wearing apparel, together with the sum of one thousand dollars in cash and the interest during the term of her natural life upon the moneys now invested in two certain mortgages upon real estate now held and owned by me against Thomas S. Morris and Bernard M. Chave, respectively, to have and to hold in her own right and to her own use so long as she may live single and unmarried, said moneys in said two mortgages to be kept on investment during the life time of said Susan Bray she to receive all the interest and income thereof—and in case she shall marry again, then in that case all the property herein bequeathed to her shall revert to my estate and be distributed among my heirs at law, share and share alike.

"2nd. At the decease of the said Susan Bray, I direct that the moneys secured to be paid by the said two mortgages be distributed and given to my heirs at law, share and share alike, that is, as to the principal sum thereof.

"3rd. I give and bequeath to my niece Elizabeth Hayes, daughter of my sister Mrs. Anne Hayes, of Cattrick, Yorkshire, England, the sum of one thousand dollars cash.

"3rd. I also give and bequeath to my said niece Elizabeth Hayes, in trust for my niece, the daughter of my brother James Burrows, late of Cattrick, Yorkshire, England, the Christian name of which niece I cannot now recollect, but which niece is in a condition of mental impairment, or incapacity, the sum of one thousand dollars cash.

"4th. The rest and residue of my estate I direct to be distributed between and given to my heirs at law, share and share alike.

"5th. I hereby nominate and appoint my friends Bernard M. Chave and Thomas S. Morris, residing at Morrisania, New York City, to be the executors of this my last will and testament, hereby revoking all former wills by me made."

This will was admitted to probate October 9, 1882. The premises in question, consisting of two lots of land in the borough of the Bronx, were bought by Burrows, respectively, in 1860 and 1864. After his death title passed through various conveyances by Susan Bray and others until it finally was vested, at the time of the commencement of this action, in the defendants Theiss and Campbell, in the proportion of three-fourths and one-fourth. Susan Bray died, unmarried, November 20, 1906.

While the proper interpretation to be placed upon the provisions of this will is not without its embarrassments, because of unskillful

framing, the most reasonable one to be applied, and that which is most in accordance with the expressed wishes of the testator, is that under the first clause of this will a fee in his real estate was devised to Susan Bray. On analysis, this clause contains (1) a gift of all his real estate to Susan Bray, together with (2) a gift of his burial plot in Bensonia Cemetery, together with (3) a gift of his household furniture and wearing apparel, together with (4) a gift of the sum of $1,000 in cash; and (5) "the interest during the term of her natural life upon the moneys now invested in two certain mortgages," "to have and to hold in her own right and to her own use so· long as she may live single and unmarried, said moneys in said two mortgages to be kept invested during the lifetime of said Susan Bray, she to receive all the interest and income thereof." Then comes the general qualifying clause that, in case Susan Bray should marry again, then in that case all the property bequeathed to her should revert to his estate. In other words, the clause beginning with "and the interest during the term of her natural life" and ending with "she to receive all the interest and income thereof" is complete in itself and refers solely to the moneys invested in the two mortgages. It is the only clause which refers to the income from property and not to a gift of property itself. It is followed by a dash, and then comes the clause stating the conditions upon violations of which her title should cease in the property bequeathed to her; that is (1) the real estate (for the word "bequeath" is used in making the gift of it to her); (2) the burial plot; (3) the household furniture and wearing apparel; (4) the $1,000 in cash.

Only in this way can an utterly unnecessary repetition be avoided; for if, as appellants contend, the clause commencing with "to have and to hold" qualifies the tenure of all the property thereinbefore devised or bequeathed, the clause after the dash becomes absolutely unnecessary. Furthermore, the phrase "to have and to hold," immediately following the description of the two mortgages, and then immediately followed by instructions as to the reinvestment of the principal of those mortgages, logically and by every rule of reasonable construction should be held to refer to that class of property alone, where there is another provision which by its very terms prescribes the tenure upon which the property (as .distinguished from the income on property) is held. The construction sought for by appellants would, among other results, give Susan Bray a life estate only in decedent's wearing apparel and in his burial plot, although the seeming absurdity of the latter provision is somewhat modified by the fact that the cemetery had been closed by the local board of health in 1872; a portion having been taken by condemnation proceedings in 1868. The two mortgages referred to constituted a very substantial portion of the estate, amounting to $4,000 or $5,000.

Moreover, the second clause of the will expressly provided for the distribution of the principal of these two mortgages among his heirs at law upon the decease of Susan Bray, but made no specific mention of any of the first four classes of property bequeathed directly to Susan Bray. The will provided for two specific legacies, and had a formal residuary clause; but there is no proof as to what estate was left

by decedent applicable to these funds. If the clause beginning "and in case she shall marry again" applied to all the property, including the life interest in the mortgages, the second clause of the will would be entirely unnecessary. Under the construction adopted, the second clause was necessary; for the provision commencing "and in case she shall marry again" applies only to the property left outright, and does not include the mortgages. It would seem, therefore, that the gift by decedent to Susan Bray of his real estate, coupled with a condition that, should she marry again, the property should revert to his estate and be distributed among his heirs at law, vested in Susan Bray a fee simple on condition, and upon her death without having violated the condition it became a fee absolute. Meantime the remainder in the heirs at law was a conditional limitation.

The judgment appealed from should be affirmed, with costs to the respondent.

McLAUGHLIN and MILLER, JJ., concur.

INGRAHAM, P. J. (dissenting). This was an action in partition. The plaintiff alleged that he is entitled to an interest in property under the will of Ralph Burrows, which was dated the 29th of January, 1879, and which was duly admitted to probate, and the question as to whether or not the plaintiff had an interest in this property depends upon the construction to be given to the first clause of this will. It is conceded that the testator died on the 10th day of August, 1882, seised in fee simple of the property in question, that the testator's wife died before him, and that he left no children; his heirs at law being nephews and nieces of the testator residing in England. It further appeared that, prior to the death of the testator's wife, one Susan Bray lived in the family apparently as a domestic. After the death of the testator's wife, Susan Bray continued to live in his house until his death, which occurred on the 10th day of August, 1882. After his death she continued to occupy the house until the time of her death.

There is evidence that the relations between the testator and his brothers and sisters and their descendants were friendly, and continued so to the time of his death; that he visited them in England, and some of them visited him in New York. By the first clause of this will the testator gave and bequeathed to Susan Bray all of his real estate, with the buildings and appurtenances, together with his burial plot in Bensonia Cemetery, situated in Morrisania, together with his household furniture and wearing apparel, and the sum of $1,000 in cash and the interest during the term of her life upon moneys invested in two mortgages, "to have and to hold in her own right·and to her own use so long as she may live single and unmarried, said moneys in said two mortgages to be kept on investment during the life time of said Susan Bray she to receive all the interest and income thereof— and in case she shall marry again, then in that case all the property herein bequeathed to her shall revert to my estate and be distributed among my heirs at law, share and share alike." There is evidence

that Bensonia Cemetery had been discontinued as a place of burial some time before the date of this will and that bodies which had been interred there were disinterred. This took place about the year 1869; a large part of that cemetery having been then taken as a public avenue.

The evident intent of the testator was to provide for Susan Bray after his death. He gave her the house in which he had lived with her for many years. He gave her the interest on certain mortgages that he owned, and he gave her this lot in the cemetery, which had been discontinued as a cemetery, and was only of value as an interest in real property. Did he intend that this devise of his real property should be in fee or a life estate? He clearly intended that if she remarried she should lose all interest in his property, and that it should then vest in the heirs at law. He had in mind the fact that he had relatives living in England, to whom, in the absence of some other testamentary disposition of his property, this property would go. It is difficult to see why he should be so careful that she should have but a life estate in the mortgages mentioned, if he intended to give the fee of the house and lot in which they had lived. In this will there are no words of inheritance, and no intention to give her a fee; and it is conceded that, if Susan Bray had remarried, whatever title she had would have been divested. He gave her all this real property "to hold in her own right and to her own use so long as she may live single and unmarried."

Giving to this language its ordinary meaning, it seems to me that this clause must relate to the devise and bequests. That this limitation did not relate to the two mortgages is apparent from the following specific provision that "said moneys in said two mortgages to be kept on investment during the life time of said Susan Bray, she to receive all the interest and income thereof." The will seems to express an intention of limiting the gift of this real property to her use during her life, or so long as she remained without a husband, who presumably would be able to support her; and the subsequent clause, providing that upon her remarriage her interest in the property should cease and should go to his heirs at law, is inconsistent with the intention that she should have a fee in the property if she died without having remarried. There is no indication anywhere in this will that he thought of giving to Susan Bray any interest in any of the property that he left her which should extend beyond her life, and it seems to me that the whole clause speaks of an intent to provide for this old servant during her life, or until she had secured a husband, who would care for her, and that upon her death or remarriage the property should then go to his relatives in England.

I think, therefore, the plaintiff became entitled under the will of the testator to an undivided interest in this real property upon the death of Susan Bray, and that the judgment dismissing the complaint cannot stand. As all the facts are found by the court which would entitle the plaintiff to an interlocutory judgment of partition and sale, if the construction to be given to this clause of the will, as before indicated, is correct, the judgment appealed from should be reversed,

and an interlocutory judgment for partition and sale in the usual form should be entered, with costs to the appellant to be paid out of the proceeds of the property.

LAUGHLIN, J., concurs.