In the Matter of the Final Judicial Settlement of the Account of Proceedings of UNITED STATES MORTGAGE AND TRUST COMPANY, as Executor, etc., of MARY MARTIN, Deceased, Respondent.

FRANCIS LEO KELLY, Appellant.

Second Department, April 2, 1929.

Lewis M. White [M. S. Meyerowitz with him on the brief], for the appellant.

Charles D. Francis, for the respondent.

KAPPER, J. Mary Martin, a resident of the borough of Richmond, city of New York, made her last will and testament under date of April 18, 1922. When Mary Martin died, the record does not inform us. We learn from it that letters testamentary were granted to the United States Mortgage and Trust Company, as executor, on April 19, 1926; that the only legatees and next of kin are Elizabeth Wallace, a sister, Francis Leo Kelly (the appellant), a grandnephew, and Michael Wallace, a nephew. In the account filed " St. Sylvester's Church, Concord, S. I." is included in the enumeration of " legatees and next of kin." Nor does this attenuated record inform us of the ages of the testatrix or of any of the next of kin. The brief of the appellant states that Elizabeth Wallace, the sister who survived the testatrix, died October 14, 1928.

The parties to the proceeding before us are the petitioner-executor and the appellant, Francis Leo Kelly, the grandnephew.

The executor filed a petition seeking a construction of the will, and a judicial settlement of its accounts. From the account as filed, and the decree appealed from, we learn that the residuary estate, which is all that there is involved here, amounts to $3,511.15. And the question arising is the correctness of the learned surrogate's direction as to the disposition of this residuum.

The will, after bequeathing $1,000 to the testatrix's sister, Elizabeth Wallace, for and during her lifetime, with the right to use the income and the principal for her support, and upon her death if any portion of said $1,000 has not been used by said sister the same is given to Francis Leo Kelly, appellant, described as the grandson of her sister Elizabeth Wallace, then proceeds as follows:

" Second. I give and bequeath to my sister, Elizabeth Wallace,

the house and lot known as 744 Danube Avenue, in the Village of Concord, Borough of Richmond, City and State of New York, for and during her natural life, and upon her death, I direct that the said property be sold as soon as possible, and the proceeds turned into my residuary estate.

" *Third.* All the rest, residue and remainder of my estate, both real and personal, I give and bequeath to my grand-nephew, Francis Leo Kelly, of the Borough of Brooklyn, City and State of New York.

" *Fourth.* I direct that my executors visit my nephew Michael Wallace, Wards Island, New York, and at the death of the said Michael Wallace, that they give him a suitable burial in St. Mary's Cemetery, Rosebank, Richmond, City and State of New York.

"*Fifth.* If the said Francis Leo Kelly die without issue, I give and bequeath my residuary estate to Saint Sylvester Church, Village of Concord, Borough of Richmond, City and State of New York."

The learned surrogate held that the 3d and 5th paragraphs of the will, read together, made it " apparent that the testator intended to give a life estate in the entire residuary estate to Francis Leo Kelly, with remainder to his issue," with the further proviso that if said Francis Leo Kelly should die " without issue him surviving then the remainder is to go to St. Sylvester's Church." And the decree directed the executor to retain such residuary estate, the income thereof to be paid to said Francis Leo Kelly during his lifetime and upon his death the principal thereof to be paid to his then surviving issue, with the further alternative to the church mentioned in the event of a death without issue.

The appellant contends that the well-settled rule, that the death without issue referred to means a death in the lifetime of the testatrix, should be applied, while the respondent argues that the phrase means a death without issue either before or after the death of the testatrix. The respondent makes no reference to the construction holding the appellant to have a life interest with remainder to his issue if any may survive him. That view is not defended, nor does it seem to me that it can be. If we were to accept the respondent's contention that the death of the residuary legatee without issue referred to a death at any time, whether before or after the testatrix's death, there would still be no basis for holding a mere life estate to have been given to the grand-nephew, with *remainder* to his issue, if any survived him. The estate in that case would be conditional only in so far as concerns the survival of issue, but the issue would not be remaindermen as they would constitute only a contingency which would ripen the conditional title into an absolute one or defeat it if there were no such issue. (*Vanderzee* v. *Slingerland,* 103 N. Y. 47, 53; *Brown* v. *Gardner,* 233 id. 261, 267; *Lawrence* v. *Calam,* 236 id. 168, 174.)

It would be idle to cite the multitude of cases which reiterate the general rule that ordinarily when a will speaks of the death of a devisee or legatee without issue it means such death occurring during the life of the testator. It suffices to quote from Judge RAPALLO's opinion in the oft-cited case of *Matter of N. Y., Lackawanna & W. R. Co.* (105 N. Y. 89, 92), viz.: " It may be regarded as a settled rule of construction that where there is a devise to one person in fee, and in case of his death to another, the contingency referred to is the death of the first named devisee during the lifetime of the testator, and that if such devisee survives the testator, he takes an absolute fee; that the words of contingency do not create a remainder over to take effect upon the death, at any time, of the first taker, nor an executory devise, but are merely substitutionary and used for the purpose of preventing a lapse in case the devisee first named should not be living at the time of the death of the testator. This construction is uniformly adopted unless there is some language in the will indicative of a different intention on the part of the testator."

There is also to be noted the language of Chief Judge HISCOCK in *Brown* v. *Gardner* (233 N. Y. 261, 265) where the learned judge, after stating the general rule, added: " It has, however, been said that the foregoing interpretation in many cases rests more upon authority than upon logic and common sense and, therefore, the courts have adopted it as a modifying principle of construction that they will not hesitate to yield even to slight evidence found in the terms of the will in order to hold that such death without issue during the life of the testator was not the latter's contemplation but that he meant death without issue occurring at any time either before or after his own decease."

And to this exception to the rule the respondent clings without seeming to me to have the essential facts upon which to predicate an exception to the rule. The only argument is based upon the 2d paragraph of the will which · gave a house and lot for life to the sister of the testatrix, and with direction, upon her death, for a sale, the proceeds to be turned " into my residuary estate;" and the contention is that this life estate in this particular house and lot is something that " intervenes " between the death of the testatrix and the vesting of the residuary in the grandnephew. *Matter of Denton* (137 N. Y. 428) is cited, where it was said (p. 433) that the general rule " cannot be extended to a case where a point of time is mentioned other than the death of the testator, to which the contingency can be referred, or to a case where a life estate intervenes, or where the context of the will contains language evincing a contrary intent." The will there involved contained

an express provision for a gift over if a death occurred before the period of time arrived at which the estate " can be divided." The language of the will left little or no room for debate in the light of the restriction in the will that the death was one necessarily to be anticipated after the death of the testator with a period of time fixed for a division of the estate.

The 3d paragraph of this will in the case at bar clearly shows " an absolute and unqualified gift of the remainder of the estate, without duty or obligation of any kind attaching." (*Erwin* v. *Waterbury*, 186 App. Div. 569, 571.) To cut down such an " absolute and unqualified gift " there must be language in the will " clear, unmistakable and certain, so that there can be no doubt of the meaning and intention of the testator." (*Erwin* v. *Waterbury, supra.*) The life estate given to the sister, with remainder over in that particular estate to the grandnephew, is not inconsistent with the bequest, subsequently following, of all of the residuary estate to the grandnephew. Upon the death of the sister the proceeds derived from the sale of the house would augment the residuary whenever the death of the life tenant occurred. It took nothing from the residuary, nor does there appear to me to be anything in its language to indicate that the residuary estate, subsequently given, was to vest only upon the death of the life tenant of another portion of the estate made the subject of a specific devise. As was said by Judge PECKHAM in *Washbon* v. *Cope* (144 N. Y. 287, 297), after setting forth the well-settled rule: " It is true that in some cases courts have stated that they would lay hold of slight circumstances to vary this construction and give effect to the language according to its natural import as referring to a death, under the circumstances mentioned, happening either before or after the death of the testator. But those circumstances must be such that a court can reasonably say there is good and fair ground upon which to base an alteration of the rule outside of and beyond the language which courts have heretofore held compelled them to enforce the rule as stated. When the language of a devise or bequest is such that the courts, without looking at any of the other provisions of a will, would say that such language meant, within the well-settled decisions, that the death spoken of was death before that of the testator, then the language in other portions of the will which is to alter that rule must be such as at least to give fair, clear and reasonable ground for saying that its proper effect is to change the rule in question."

The decree of the Surrogate's Court of Richmond county, in so far as appealed from, should be reversed upon the law, with costs

of this appeal to the appellant, payable out of the estate, and a new decree directed to be entered in conformity with the foregoing views.

LAZANSKY, P. J., RICH, CARSWELL and SCUDDER, JJ., concur.

Decree of the Surrogate's Court of Richmond county, in so far as appealed from, reversed upon the law, with costs of this appeal to the appellant, payable out of the estate, and a new decree directed to be entered in accordance with opinion. Settle order on notice.