In the Matter of the Estate of T. Spencer Baker, Deceased.

Surrogate's Court, Chenango County, January, 1933.

*Lee, Levene, Verreau & McAvoy*, for the executor, The Chenango County National Bank and Trust Company of Norwich.

*Hubert C. Stratton*, for Mae Baker Corey and Grace Baker Holmes.

*Minnie L. Seeley*, for executor of the estate of Ella Tuton Baker, deceased.

*Glenn F. Carter*, for the National Spiritual Association of the United States of America.

BROWN, S.  This proceeding was instituted for a compulsory accounting by the executor of the last will and testament of decedent, and for a construction of said last will and testament.  The will is in the handwriting of the decedent, who was not a lawyer, and, so far as appears in the record, was unfamiliar with legal terms or phraseology, and unskilled in the matter of drafting of legal instruments.  At the time the will was made, his immediate family consisted of his wife, Ella Tuton Baker, and two daughters, Mae Baker Corey and Grace Baker Holmes, all of whom survived testator.  The widow, subsequently and prior to the institution of these proceedings, died, leaving a last will and testament, and her estate is represented in these proceedings by the executor thereof.  The record shows that the testator was on intimate and friendly terms with his wife and daughters.

That portion of the will material at this time reads as follows:
" *Second.* After all my debts have been paid, in full, I give and bequeath to my wife Ella Tuton Baker (*as long as she remains my widow,*) and daughters Mae Baker Corey Grace Baker Holmes, jointly my entire real and personal estate of whatever name, or nature, I may be the possessor of.  And in case of the transition of either of the said parties, the entire estate both real and personal as mentioned above, shall revert to the surviving ones, and at the transition of all of the said parties without issue, the said estate

as mentioned above, shall revert to *The National Spiritual Association of United States of America.*"

The use of the word " transition " in the will, where it appears, is accounted for by the fact that the decedent was a Spiritualist.

Our chief concern here is to ascertain the intention of the testator. This is the primary and paramount consideration. Certain rules have been established for guidance in the interpretation to be placed upon wills which are of doubtful meaning, or ambiguous or contain repugnant clauses. All rules must yield to the intention in the mind of the testator, if such can be determined from the language of the will. (*Matter of Hughes*, 225 App. Div. 29; *Matter of Buttner*, 243 N. Y. 1; *Matter of Rooker*, 248 id. 361; *Matter of Rossiter*, 134 Misc. 837; *Callahan* v. *Volke*, 220 App. Div. 379; *Taggart* v. *Murray*, 53 N. Y. 233; *Phillips* v. *Davies*, 92 id. 199.) When the meaning, as expressed in the language of the will, is not free from doubt, and there is in the mind of the court an uncertainty as to the intention of the testator, as gathered from the phraseology of the will, it may resort to the established rules applicable in such cases.

The chief contention in this case, as between the interested parties, arises out of the portion of the quoted part of the will which provides that in case of the death of the widow and daughters, without issue surviving the latter, the estate shall revert to The National Spiritual Association of the United States of America. The daughters claim an absolute estate vested in them at the death of the father. The association referred to takes the position that the estate in the daughters was one for life only, and the fee vests in the association in case of their death without issue, and the representative of the widow contends for a construction holding that she became vested, at the death of the testator, with a one-third interest in the estate.

In the first sentence of the paragraph testator gives, absolutely, all of his property to his wife and daughters, the gift to the wife being qualified by the provision " as long as she remains my widow." It is only because of the clause directing that at the " transition of all of the said parties, without issue, the said estate as mentioned above shall revert to The National Spiritual Association of United States of America," that any doubt is cast upon the intention of the testator. In ascertaining such intention, we first must consider the time of the happening of the contingency referred to in the clause. Did he refer to death during his lifetime or occurring subsequently to his demise? There is nothing in the phraseology used by decedent to indicate he did not mean death during his lifetime. In the absence of anything in the will to indicate a different intention on his part, the death referred to is one occurring during

the lifetime of testator. (*Tyndall* v. *Fleming*, 123 App. Div. 837, 839; *Erwin* v. *Waterbury*, 186 id. 569; *Washbon* v. *Cope*, 144 N. Y. 287, 297; *Quackenbos* v. *Kingsland*, 102 id. 128; *Matter of Tienken*, 131 id. 391; *Stokes* v. *Weston*, 142 id. 433; *Matter of N. Y., L. & W. R. R. Co.*, 105 id. 89, 92.) In the latter case the court say: " It may be regarded as a settled rule of construction that where there is a devise to a person in fee, and in case of his death to another, the contingency referred to is the death of the first named devisee during the lifetime of the testator, and that if such devisee survives the testator he takes an absolute fee; that the words of contingency do not create a remainder over to take effect upon the death, at any time, of the first taker, nor an executory devise, but are merely substitutionary, and used for the purpose of preventing a lapse in case the devisee first named should not be living at the time of the death of the testator. This construction is uniformly adopted unless there is some language in the will indicative of a different intention on the part of the testator." I find no language in the will under consideration indicating any different intention. We should also be guided by the general rule that the law favors the vesting of legacies. (*Bowditch* v. *Ayrault*, 138 N. Y. 222; *Matter of Russell*, 168 id. 169, 175; *Matter of Hammond*, 74 App. Div. 547, 552; *Williams* v. *Williams*, 152 id. 323, 325.)

Where a controversy arising over the construction to be placed upon a will is between the immediate kin of the testator and a stranger, if a doubt exist, it should be resolved in favor of those of testator's blood. (*Quinn* v. *Hardenbrook*, 54 N. Y. 83; *Wood* v. *Mitcham*, 92 id. 375, 379; *Kelso* v. *Lorillard*, 85 id. 177, 182; *Matter of Rooker, supra; Matter of Knight*, 196 App. Div. 355, 358; *Matter of Edie*, 117 id. 310, 313; *Matter of Brewster*, 144 id. 899.)

The gift to the widow and daughters, in the first part of the will, is clearly an absolute gift. The language is clear and unmistakable, and, standing alone, vests in the beneficiaries an absolute fee title. Such an estate, once devised, will not be sacrificed or cut down by repugnancy, and the primary legatee takes the fee, unless the subsequent words are as convincing as those used giving the estate. (*Goodwin* v. *Coddington*, 154 N. Y. 283; *Banzer* v. *Banzer*, 156 id. 429; *Washbon* v. *Cope, supra; Herzog* v. *Title Guarantee & Trust Company*, 177 N. Y. 86; *Benson* v. *Corbin*, 145 id. 351; *Clarke* v. *Leupp*, 88 id. 228; *Roseboom* v. *Roseboom*, 81 id. 356; *Erwin* v. *Waterbury, supra*.)

I have reached the conclusion that the gift to the testator's widow and two children was an absolute gift, and vested in them title to the real and personal property on the death of the testator.

The remaining question to be considered deals with the interest

or estate vesting in the widow and two children. Was this a joint estate, or did they take as tenants in common? The testator, in the preparation of his own will, had no knowledge, so far as the record shows, of the meaning of legal terms or the principles of law governing a joint tenancy and a tenancy in common. The use of the word "jointly," in a will drafted by a layman, who, so far as appears, was unacquainted with the nature and properties of a joint estate, is not of sufficient significance to justify an inference that he intended to create a joint tenancy rather than a tenancy in common. (Real Prop. Law, § 66; *Overheiser* v. *Lackey,* 207 N. Y. 229; *Matter of Haddock,* 170 App. Div. 26.) In my opinion, the widow and two daughters took the estate, under the will, as tenants in common, and that the one-third interest vested in Ella Tuton Baker a fee simple, on condition that she not remarry, and upon her death, without having violated the condition, it became a fee absolute. (*Hayes* v. *Harrison,* 140 App. Div. 453; affd., 206 N. Y. 661; *Morehouse* v. *Morehouse,* 33 App. Div. 250; affd., 161 N. Y. 654; *Weiss* v. *City of Mt. Vernon,* 157 App. Div. 383, 387; *Matter of Smallman,* 141 Misc. 796.)

A decree in accordance with the foregoing may be entered.