In the Matter of the Estate of FLORENCE M. SUTTON, Deceased.

Surrogate's Court, Westchester County, January 6, 1934.

*Hill, Lockwood & Redfield* [*Milton A. Willment* of counsel], for Robert Redfield, one of the executors.

*Edward P. Barrett* [*Harrison T. Slosson* of counsel], for The Mount Kisco National Bank and Trust Company, an executor, and for the Bedford Cemetery Association, a legatee.

*Gaillard, Fisher, Allen & Bateson* [*Frederick S. Fisher* and *E. Farrar Bateson* of counsel], for Charlotte V. Bacon.

*Cadwalader, Wickersham & Taft,* for the Home for Old Men and Aged Couples.

*Thomas R. Fay,* for Florence Morgan and another.

SLATER, S. This is an application by one of three executors to have determined the effect of the disposition of property contained in the will. The petitioner asks the court to decide whether paragraph sixteenth of the will relates only to the general legatees or whether it relates also to the residuary legatees; whether paragraph sixteenth is to be read with paragraph fourteenth, and, if so read, does it suspend the power of alienation of the real property, or the absolute ownership of the personal property, in violation of the Statute against Perpetuities; and, if so read, does it postpone the absolute vesting of the bequests in violation of the Statute of Perpetuities?

The testatrix died August 27, 1933, and her will was admitted to probate on October 10, 1933. The will contains a large number of money legacies in various amounts, aggregating about $272,500, to be given to friends, relatives and charities by paragraphs first to twelfth, inclusive. The thirteenth paragraph directs that the said legacies be paid free of any transfer, succession or inheritance taxes. The fourteenth paragraph deals with the residuary estate and is as follows:

"*Fourteenth.* All the rest, residue and remainder of my property and estate, of every kind and description, and wherever the same may be situated, I give, devise and bequeath, in equal shares, to Arthur Macy Blackstone, Samuel Clark, John Clark, George H. Shaw, Mary Shaw and Mary Eaton Gilkey, or to the survivors or survivor of them."

The fifteenth paragraph gives authority to the executors to sell, exchange, lease or mortgage real property and to make thereon improvements, temporary or permanent.

The sixteenth paragraph is as follows:

" *Sixteenth.* Unless otherwise herein specified, in the event that any legatee shall have died before he or she shall have received the legacy bequeathed to him or her, I hereby direct that the same shall lapse and revert to and form part of my residuary estate."

There are several other paragraphs to the will. All the persons and corporations mentioned as general legatees as well as those named in the residuary paragraphs *survived* the testatrix.

Counsel for Charlotte V. Bacon, a distributee in the event of intestacy, as well as a non-taker under the terms of the will, contend that paragraph sixteenth refers to and affects the residuary clause of the will, as well as the general legacy paragraph, that the residuary clause is void, and that the testatrix died intestate because the Statute of Perpetuities is offended. It is argued that the words of survivorship in the residuary clause, read with paragraph sixteenth, create a suspension of the power of alienation because more than two lives may be used before the residuary legacy is " received." I do not agree with the contention of the learned counsel for Mrs. Bacon.

The residuary gift is to six certain named persons in *equal shares* with words of present gift. The words in " equal shares " are strictly consistent with an absolute gift of the residue to the six named persons (*Matter of Tamargo,* 220 N. Y. 225, 230.) The will speaks as of the date of the testatrix's death. No contrary intent is indicated. The words " or to the survivors or survivor of them " will be construed as relating to the death of the testatrix, because such a construction is not incompatible with the other provisions of the will. Futurity is not annexed to the gift. The six named persons take vested interests. There can be no fair question but that the testatrix designed to vest the title to her residuary estate in those of the six named persons living at her death and beyond that we have no concern. She named them and to them alone who survived her she gave. The language is absolute. Her meaning " is not disturbed or shadowed." (*Nelson* v. *Russell,* 135 N. Y. 137, 141; *Matter of Wiley,* 111 App. Div. 590, dissent by Justice HOUGHTON, p. 597, which was concurred in by the Court of Appeals, 188 N. Y. 579; *Matter of Woodruff,* 135 Misc. 203, 207; *Matter of Duffy,* 143 id. 421, 422; 2 Roper Leg. 1374.)

In *Bindon* v. *Earl of Suffolk* (1 P. Wms. 96) there was bequeathed to five grandchildren, *share and share alike,* equally to be divided

between them; and if either of them died, then his share to go to the survivors and survivor of them. It was decided that the grandchildren took as tenants in common by force of the words " share and share alike; " and ·by the subsequent words it must be intended, if any of them died during the life of the testator; for, were it not for this clause, if any grandchild had died before the testator, his share would lapse; that the will must relate to the time of making.

Where a gift is made to two or more individuals *nominatim* it is presumed to vest the subject-matter in them as tenants in common. (*Overheiser* v. *Lackey*, 207 N. Y. 229, 233; *Matter of King*, 200 id. 189; *Matter of Hoffman*, 201 id. 247; *Matter of Barrett*, 132 App. Div. 134; *Matter of Young*, 133 Misc. 454; *Matter of McCafferty*, 142 id. 371, 381, and cases cited.)

No question is involved in relation to the rule against perpetuities or the remoteness of the vesting. (*Matter of Wiley*, *supra*.)

The gifts of the general legacies of money are also made in language that creates an absolute gift to each legatee. (*Matter of DeWitt*, 139 Misc. 138, 141.) The rule is established that the courts refuse to cut down an estate already granted unless such terms of limitation in themselves show a clear intention to do so by use of words definite in their meaning. (*Tillman* v. *Ogren*, 227 N. Y. 495; *Matter of Rooker*, 248 id. 361, 364; *Matter of Martin*, 225 App. Div. 502, 506; *Erwin* v. *Waterbury*, 186 id. 569, 571; *Matter of Baker*, 146 Misc. 296, 298, 299.)

The highly important word in paragraph sixteenth is the word " *received*." What did the testatrix intend by the use of that word? Did she mean to divest the objects of her bounty if they should die before a certain time? And if so, what time did she choose? The word " received," coupled with other words of intent, may be construed to relate to several periods when the general legatees may " receive " the gifts: (1) When the legacies were vested at the time of death or the probate of the will. (*Matter of Jarvis*, 110 Misc. 5, 12; *Cammann* v. *Bailey*, 210 N. Y. 19, 30; *Fulton Trust Co.* v. *Phillips*, 218 id. 573, 582.) (2) When the legacies are enforcible, which may be seven months after the grant of letters. (*Matter of Brooklyn Trust Co.*, 179 App. Div. 262; Surr. Ct. Act, §§ 217, 218; 1 Roper Leg. 552.) (3) When part payment of the legacy may be made. (4) When the legacies are *actually* " received," which may be some distant time at the whim or caprice of the executors. The word " received " in connection with the Income Tax Law was held to mean *actually* received. (*Matter of Kernochan* v. *Gilchrist*, 214 App. Div. 114, 116.)

Which time did she intend to have the legacies " received?" Evidence is necessary to establish in what sense the decedent used

the ambiguous word in question, but extraneous evidence was not forthcoming to assist in deciding the question as an issue of fact. There is nothing in the language of the will to indicate what the will maker intended by the use of the word "received." The word "payable," similar to the word "received," is of ambiguous import (1 Roper Leg. 624), and is capable of being referred to the period when the legacy is to vest in interest, or to the time when it becomes due. (*Hallifax* v. *Wilson*, 16 Ves. 168.)

I am installing the judicial mind in the place and surroundings of the mind of the testatrix. I do not arrive with surety at any one period of time. I have tried to obtain her thoughts and impulses. Paragraph sixteenth is ambiguous and construction is difficult and I have sought interpretation in the light of the language of the entire will and the surrounding circumstances. Courts should not lightly set aside wills where the central plan is plain and may be carried out without violating any statute. Paragraph sixteenth is unrelated and separate from the paragraph of gifts. Where an estate has been given in an earlier part of the will and is clear and definite, construction will not give a strained and unnatural effect to the language occurring in subsequent paragraphs in order to cut down or impair the integrity of the gift where the subsequent language is not definite and certain, but, on the other hand, is doubtful and ambiguous. (*Matter of Barney* [Fourth Dept., Justice DAVIS writing], 207 App. Div. 25, 27; affd., 239 N. Y. 584.)

While excision is a dangerous remedy (*Adams* v. *Massey*, 184 N. Y. 62, 69), it is best to eliminate in this operating laboratory for questioned wills "an epidermal callosity" in a perfectly harmless manner. The word "received," as used in paragraph sixteenth, is indefinite, inconsistent and repugnant to the words of absolute gift and I hold the paragraph is void for ambiguity. It should be wholly disregarded as meaningless and nugatory. (*Tillman* v. *Ogren, supra; Matter of Wiley, supra;* 2 David Law of Wills, § 810; 2 Jessup § 933-a.)

Even if the sixteenth paragraph should be allowed to stand and the word "received" therein be accorded an interpretation of definiteness as to the time of payment, the contention of Mrs. Bacon could not prevail. Should a general legatee die before the arrival of such a period, the lapsed legacy would pass into the residuary estate. (*Matter of Cole*, 235 N. Y. 48, 56; *Matter of Mahlstedt*, 140 Misc. 245, 255.)

The decedent never intended to have the event of death, referred to in the sixteenth paragraph, relate to those who take the residuary estate. To adopt the theory of counsel for Mrs. Bacon would charge the testatrix with the deliberate purpose of creating intestacy.

She sought to die testate as to all her property. The views adopted here prevent an intestacy according to the fundamental rules of construction. (*Clark* v. *Cammann*, 160 N. Y. 315.) Intention is the best known and most reliable censor of construction. An intent to create an illegal gift or to die intestate is not to be lightly inferred. When there is ambiguity, that construction should be adopted which will best carry the testator's intention into effect. (*Matter of Rossiter*, 134 Misc. 837, 840, and cases cited; affd., 229 App. Div. 730; affd., 254 N. Y. 583.)

There is no need of applying the presumption against intestacy. (*West* v. *West*, 215 App. Div. 285.) There is plain evidence in the residuary clause that the testatrix did not intend to die intestate of any portion of her estate. The rule of law is familiar that a legacy or devise will lapse when the legatee or devisee dies before the testator. (*Matter of Allen*, 111 Misc. 93, 121; affd., 236 N. Y. 503.) To escape the rule that a void bequest of the residuum will pass to the next of kin, if one of the six named persons should die before the testatrix, was the reason for the use of the words " or to the survivors or survivor of them." The door was legally closed to all others who might seek the estate.

According to my interpretation of the will, the general legatees are possessed of vested legacies from the time of the probate of the will, and the six named persons in the residuary clause are likewise vested with the residuary estate. The decedent did not die intestate as to any part of her property.

Submit decree according to this opinion and decision with notice to appearing counsel.