DANNENBURG v. DANNENBURG et al.

No. 35092.

Supreme Court of Oklahoma.

June 23, 1953.

Rehearing Denied Sept. 15, 1953.

Dissenting Opinion June 8, 1954.

Application for Leave to File Second Petition for Rehearing Denied June 8, 1954.

Wayne W. Bayless, Oklahoma City, Harry D. Moreland, Tulsa, for plaintiff in error.

John J. Southwick, William A. Harrington, Hurst & Hurst, David H. Sanders, Edwin A. Ellinghausen, Tulsa, and P. W. Holtzendorff, Claremore, for defendants in error.

**PER CURIAM.**

This action involves a construction of the will of Sarah Elizabeth Dannenburg, deceased.

For convenience the different paragraphs of the will and the two codicils are numbered. The will and codicils, omitting the attestation clauses, read:

"Will of Sarah Elizabeth Dannenburg

"1. I, Sarah Elizabeth Dannenburg of Chelsea, Oklahoma, being of sound mind do make and publish this my last will.

"2. I, hereby revoke all other wills and testamentary instruments. I am a widow, and have four surviving children, viz.:

"O. L. Dannenburg, now at Los Angeles, California

"Henry W. G. Dannenburg, of Oklahoma City, Oklahoma

"Alice N. Dannenburg, of Chelsea, Oklahoma

"W. N. Dannenburg, of Tulsa, Oklahoma and

two grandchildren, the children of a deceased daughter Beatrice, by her first husband, named Waldemar Dwight Todd, and Alfred Grady Todd, of Chelsea, Oklahoma.

"3. I direct that all my just debts, and my funeral expenses and the expenses of administration be paid, and I name my son Waldemar N. Dannenburg as executor of my will, and request the Probate Court not to require him to give any bond, and if bond be required that it be a nominal one, subject to the above.

"4. I bequeath to my daughter, Alice N. Dannenburg, and direct my executor to deliver to her as soon as possible after my death, thirty thousand dollars ($30,000.00) in value of money and liberty bonds at market value when delivered, to be selected by my executor.

"5. The remainder of my estate I devise and bequeath to my son W. N.

Dannenburg in trust for the uses and purposes hereinafter set out.

"6. I direct that my home and all household furnishings be held by my trustee as long as my daughter, Alice N. Dannenburg desires to occupy the home and she be permitted to use them free of charge, and that when she ceases to use the home my trustee shall deliver to her as her own, my library table that belonged to my Great Great Grandfather, Abram Bradley, and at said time he shall deliver to my Grandson, Alfred Todd, my walnut sofa, and my books and my high boy, to be his absolutely, and at said time my trustee shall deliver to my Grandson, Dwight Todd, the four pictures brought from France, and their frames, and the two commodes and lamps kept thereon, and my convex mirror, two brass sconces, and the hand painted picture of Uncle Joseph Bradley, and my Chippendale chair.

"7. I direct that my trustee deliver to my Granddaughter, Janet Elizabeth Dannenburg, on her eighteenth birthday, the miniature painting of Uncle Joseph Bradley, my two diamond rings, one with solitaire setting, the other a cluster, my diamond and pearl broach, my black onyx pin with pearl spray, my gold cross and chain, my hand carved cathedral chair, my Great Grandmother's jewelry box, and my silver tea set, the silver tea set and picture to remain for the use of Alice Dannenburg as long as she maintains the home, all to be the property of my said Grandchild. In the event my Grandchild fails to reach her eighteenth birthday, the legacy to her to lapse.

"8. After paying my debts, funeral expenses, and expenses of administration, and the legacy to Alice N. Dannenburg, I devise and bequeath to my son Waldemar N. Dannenburg all the remainder of my estate of every kind, to be by him held in trust and used for the purposes above set out, and for the purpose of converting it into cash as rapidly as his judgment as a pru-

dent business man may indicate, and the distribution of the cash, and for that purpose I empower him to collect all debts owing to me and to sell for cash or on time any and all my property, and make conveyance of same, renew the obligations due me and from time to time distribute the cash on hand after paying the expenses as follows:

"9. One fourth to my son, W. N. Dannenburg, one fourth to my son O. L. Dannenburg, one fourth to my son Henry W. G. Dannenburg, one eighth to my Grandson Alfred Grady Todd, one eighth to my Grandson Waldemar Dwight Todd, until the $30,-000.00 legacy to Alice N. Dannenburg is equalized, at which time she shall share in the remainder on the basis of one fifth to each of my children, and the body heirs of any deceased child.

"10. In the event any of the beneficiaries herein provided for shall die before receiving the full amount of his or her legacy, the remaining portion shall lapse unless the legatee shall leave heirs of the body, in which case the undistributed portion of the beneficiary shall be distributed to his or her heirs of the body in equal parts, but in case either of the Todd Heirs shall die before receiving his full portion, and without body heirs, his part shall go to the remaining one.

"11. In the event there is any remainder of my estate after the legacies herein provided are paid in full, I direct that it be converted into cash and divided equally between my surviving children, and the heirs of their bodies, the body heirs to represent their deceased parents.

"12. I further direct that any disposition by any beneficiary of any share prior to actual distribution shall be absolutely null and void, and that no liens either voluntary or by operation of law can be made to bind the share of any beneficiary prior to distribution by the trustee, and the trustee is forbidden to recognize such disposal.

"13. It is my desire that my trustee proceed as rapidly as good business management may indicate to convert the estate into cash and distribute the proceeds, and that no bond be required of him as trustee.

"14. It is my will that my executor and trustee be allowed one hundred dollars ($100.00) per month for services to be retained each month and all necessary travelling and office and legal expenses in handling the estate, the allowance for personal services to end by the expiration of 24 months from my death, the same to be in lieu of commissions.

"15. In case any beneficiary contests this will the share of such contestant in my estate shall be one dollar ($1.00) and no more, and the remaining portion of such contestants legacy shall lapse. Any debt of any beneficiary owing me at my death, shall be cancelled and no effort shall be made to collect the same.

"16. It is my desire and will that my trustee, with funds of the estate, pay the taxes and keep in repair and insure the home and furniture against fire and wind storms as long as Alice N. Dannenburg uses them as a home, and as soon as she abandons the same, or dies, the home place along with the furniture, shall be converted into cash by my trustee and proceeds, after paying expenses, shall by the trustee be distributed to the surviving beneficiaries, and the body heirs of any deceased beneficiary as above provided, but nothing shall be given under this provision to any contestant.

"17. In the event of the inability of the trustee named at any time to act, I request the District Court of Rogers County to appoint some discreet person not interested in the estate to finish the conversion into cash, and the distribution between the beneficiaries and heirs of the body as above provided, requiring such bond to be given by the substituted trustee as in the discretion of said court may be proper, and the trustee to make the distribution and conveyances under direction of said court for reasonable compensation to be fixed by said Court.

"18. In witness of all which I have hereunto on this 7th day of April, 1936, subscribed my name in the presence of R. C. Brewer and W. H. Kornegay and C. S. Kornegay, at the end thereof whom I have requested to act as subscribing witnesses.

"/s/ Sarah Elizabeth Dannenburg
"Testatrix

"Codicil to Will of Sarah Elizabeth Dannenburg

"1. I, Sarah Elizabeth Dannenburg, do make and publish this codicil to my will heretofore made on April 7th, 1936, witnessed by R. C. Brewer, W. H. Kornegay and C. S. Kornegay.

"2. There is in said will a clause providing that any debt owing to me at my death by a beneficiary should be cancelled. I have made loans to some of the beneficiaries since the making of said Will, and have made gifts out right to some, and now direct that there be charged against the shares of the beneficiaries set out in said Wills, as an advancement already made, the following amounts;

"3. To the share of my Grandson Alfred Grady Todd nothing, of my Grandson Waldemar Dwight Todd One Thousand Dollars ($1000.00), of my daughter Alice N. Dannenburg nothing, of my son W. N. Dannenburg nothing, of my son, O. L. Dannenburg One Thousand Dollars ($1000.00) of my son Henry W. G. Dannenburg Three Thousand Dollars ($3000.00).

"4. In making the above adjustment, the amount of all loans made and other advancements made by me in excess of the amounts specified are by me now cancelled. Any advances made by me from now on, to any of said beneficiaries, I direct shall be classed in the distribution of my estate as an advancement, and settlement be made on that basis.

"5. I further modify the provision found on page three (3) of my said

will providing compensation for my execution by substituting thirty six (36) for twenty four (24) months.

"6. The body of said will contains four (4) pages, and the attesting clause one (1) page, all of which I further identify by signing my initials "S.E.D.", on the back of each page.

"7. I direct that this codicil be attached to said will and become a part thereof.

"8. I have requested Chas. E. Wright, C. S. Kornegay and W. H. Kornegay to act as subscribing witnesses to this codicil on this 19 day of November, 1937.

"/s/ Sarah Elizabeth Dannenburg

"Second Codicil to Will of Sarah Elizabeth Dannenburg

"1. I, Sarah Elizabeth Dannenburg, of Chelsea, Oklahoma, do hereby make and publish this Second Codicil to my Will heretofore made and executed on April 7th, 1936, and Codicil thereto made and published on November 19th, 1937.

"1. First. The specific legacy given to my daughter, Alice N. Dannenburg, as provided in the Fifth paragraph on Page 1 of my original Will, shall be paid to her, instead of a lump sum, at the rate of Two Hundred Dollars ($200.00) per month, commencing immediately after my death, and continuing until the entire amount of thirty Thousand Dollars ($30,000.00) has been paid to her. In the event she should die prior to receiving the full Thirty Thousand Dollars ($30,000.00), then the remaining unpaid balance of such legacy shall lapse and become a part of my estate, and shall be distributed to the other beneficiaries, as provided in my Last Will and Testament and the two Codicils thereto. I desire and direct that as soon after my death as possible that my executor set aside and segregate Thirty Thousand Dollars ($30,000.00) in value of money or liberty bonds, or other liquid securities at the then market value, to be selected by my executor and that the same be segregated from the re-

mainder of my estate and held by my Executor in trust for the purpose of providing for and paying such specific legacy to my daughter, Alice N. Dannenburg, in monthly payments.

"2. Second. The last paragraph on Page 2 of my original Will is clarified so that my sons, W. N. Dannenburg, O. L. Dannenburg, and Henry W. G. Dannenburg, shall each receive the sum of Thirty Thousand Dollars ($30,000.00) and my Grandsons, Alfred Grady Todd and Waldemar Dwight Todd, shall each receive the sum of Fifteen Thousand Dollars ($15,000.00) before my daughter, Alice N. Dannenburg shall participate in the distribution of my estate, after having received the specific bequest to her of Thirty Thousand Dollars ($30,000.00). This is done to equalize the bequests to each of the other children and grandchildren. I also direct that the children of a deceased child of mine shall take the share of such child by right of representation, that is the share which would have gone to such deceased child of mine, shall pass to and vest in, the child or children of such deceased child of mine, by right of representation.

"3. Third. In the event of the death of the executor or trustee herein named and designated, I hereby direct and request that the First National Bank and Trust Company of Tulsa, Oklahoma, be appointed executor and trustee, with like duties, powers and authority as granted to the original executor and trustee, save and except, that such substituted executor and trustee, shall be required to give bond as provided by statute.

"4. Fourth. I direct that this Second Codicil be attached to my said Last Will and Testament and become a part thereof, and that the original Will and the Two Codicils be construed together and carried out according to the original terms thereof, as modified or restricted in the codicils.

"In Witness Whereof, I have requested M. G. Jenson and R. C. Brewer to act as subscribing witnesses to

this Second Codicil on this 3rd day of January, 1942.

"/s/ Sarah Elizabeth Dannenburg
"Testatrix."

Henry W. G. Dannenburg died before receiving all of his interest in the remainder of the estate under the will.

Warren N. Dannenburg, the son of Henry W. G. Dannenburg, sought a construction of the will in the District Court of Tulsa County.

The question herein presented is whether, under the terms of the will, Warren N. Dannenburg or Naomi L. Dannenburg, the executrix of the estate of Henry W. G. Dannenburg, deceased, is entitled to the interest devised and bequeathed to Henry W. G. Dannenburg.

The trial court held that Warren N. Dannenburg should prevail, and from such judgment the executrix appealed.

There is no substantial dispute in the facts.

Sarah Elizabeth Dannenburg, hereafter referred to as "testatrix," executed said will on April 7, 1936, and on November 19, 1937, she executed a codicil thereto and on January 3, 1942, she executed the second codicil to said will.

At the time the will and the codicils were executed, testatrix had four living children, O. L. Dannenburg, Henry W. G. Dannenburg, Alice N. Dannenburg and W. N. Dannenburg, and also two grandchildren.

Testatrix died March 27, 1943, and all of the beneficiaries named in the will survived her.

Alice N. Dannenburg died 30 days after the testatrix.

W. N. Dannenburg was appointed executor of the will on April 24, 1943, and was discharged as executor in February, 1947. During this period and until his death in July, 1947, he acted either as trustee or executor of said estate.

Henry W. G. Dannenburg died testate December 21, 1948, and left surviving him as his only heirs at law, Warren, the son, and plaintiff herein, and Naomi L., the wife and executrix of his estate, a defendant herein.

After the death of W. N. Dannenburg, the First National Bank of Tulsa, hereafter called "Bank," was appointed as successor trustee in September, 1947, and has continued to act as trustee since said date.

 The will, by its terms, provided for certain specific legacies and by a "residuary" clause disposed of the remainder of her estate. All of the money legacies to the children and grandchildren except W. N. Dannenburg have been paid, and this Court is called upon to direct the trustee how to distribute Henry W. G. Dannenburg's interest in the "remainder" or "residue" of said estate.

The distribution of Henry W. G. Dannenburg's interest will control the distribution of W. N. Dannenburg's undistributed portion of the remainder.

The assets of the estate consisted of cash, bond, stocks, real property, oil and gas and coal royalties.

The plaintiff, at the trial of said cause, contended that the interest of Henry W. G. Dannenburg in the "remainder" was a contingent interest by reason of paragraph 10 of the will and that his interest in the remainder lapsed upon his death and vested in plaintiff as a blood heir, to the exclusion of his wife, the defendant herein.

The defendant contends that his interest in the remainder was indefeasibly vested, and upon his death, his estate became entitled to such undistributed portion, and that the acts of the executor and trustee were either arbitrary or fraudulent and were designed to deprive his estate of its share in the remainder.

In the answer brief plaintiff says: "The sole question is: Who should receive the residuary legacy? All agree that the intention of the testatrix, as determined from the four corners of her Will, controls and is decisive of that question."

Paragraph 4 of the will provided for a $30,000 gift to Alice; paragraph 9 of the will gave each of her other living children a $30,000 gift and a gift of $15,000 each to her two grandsons, the sons of a deceased daughter; and the remainder of her estate to each of her children in equal proportions, except the two grandchildren,

who took the interest of their previously deceased mother.

Paragraphs 9 and 10 of the will are again set forth.

"9. One fourth to my son, W. N. Dannenburg, one fourth to my son, O. L. Dannenburg, one fourth to my son, Henry W. G. Dannenburg, one eighth to my Grandson, Alfred Grady Todd, one eighth to my Grandson, Waldemar Dwight Todd, until the $30,000.00 legacy to Alice N. Dannenburg is equalized, at which time she shall share in the remainder on the basis of one fifth to each of my children, and the body heirs of any deceased child."

"10. In the event any of the beneficiaries herein provided for shall die before receiving the full amount of his or her legacy, the remaining portion shall lapse unless the legatee shall leave heirs of the body, in which case the undistributed portion of the beneficiary shall be distributed to his or her heirs of the body in equal parts, but in case either of the Todd Heirs shall die before receiving his full portion, and without body heirs, his part shall go to the remaining one."

The trial court held that "the provision for limitation over in the 10th paragraph of the original Will applied to her entire estate" and that: "In construing said Will and the Codicils thereto, the Court concludes that it was the intention of said testatrix, Sarah Elizabeth Dannenburg, that the residue of her estate not actually paid over to any heir prior to his or her death should pass to the blood heirs of said deceased heir and be vested in said blood heir only upon the actual receipt of his or her share of said residue."

The highly important word in paragraph 10 is "receiving." What did the testatrix intend by the use of that word; did she intend to divest the objects of her bounty if they should die before a certain time; and, if so, what time did she choose? The word, "receiving," coupled with other words of intent, may be construed to relate to several periods when the legatees and devisees may "receive" the gifts: (1) When the legacies were vested at the time of the death, or the probate of the will; (2) when the legacies are enforceable, which may be many months after the granting of letters testamentary; (3) when part payment of the legacy may be made; (4) when the legacies are actually "received" which may be some distant time at the whim or caprice of the executor or trustee. Which time did the testatrix intend to have the legacies "received?"

The word, "receiving", so used, is ambiguous.

Evidence is necessary to establish in what sense the decedent used the ambiguous word in question, but extraneous evidence was not forthcoming to assist in deciding the question as an issue of fact. There is nothing in the language of the will to indicate what the testatrix intended by the use of the word, "receiving."

Installing the judicial mind in the place and surroundings of the mind of the testatrix, we are unable to arrive, with certainty, at any one period of time. We cannot obtain her thoughts and impulses. Paragraph 10 is ambiguous and construction thereof is difficult and we have sought interpretation in the light of the language of the entire will. Courts should not lightly set aside wills where the central plan is plain and may be carried out without violating any portion thereof or any Statute. Paragraph 10 is unrelated and separate from the other paragraphs making gifts.

Where an estate has been given in an earlier part of the will and is clear and definite, construction will not give a strained and unnatural effect to the language occurring in subsequent paragraphs in order to cut down or impair the integrity of the gift, where the subsequent language is not definite and certain, but, on the other hand, is doubtful and ambiguous. In re Sutton's Will, 150 Misc. 137, 268 N.Y.S. 458; 2 David, Law of Will, Section 810; 2 Jessup, Sec. 933A; 142 A.L.R. 136, at pages 160, 165.

The family relationship, the quality of gifts, the rules for the construction of wills and the expressed intention of the testator, the whole will being considered, causes this Court to decide that the children and grand-

children of the testatrix, all of whom were living at the time of her death, took at the date of the death of the testatrix vested remainders in the trust estate.

The word "receiving" as used in the clause of the will providing for lapse of legacies in case of legatee's death before legacy is received is inconsistent and repugnant to the words of absolute gift and the clause is, therefore, void for ambiguity. The share of Henry W. G. Dannenburg, who survived testatrix, but died before distribution of the estate, is payable to the personal representative of his estate.

It is plain, upon consideration, that the trust in the residuary clause was to provide a careful and deliberate liquidation of the assets and to insure the realization of their full value, rather than that they be possibly sacrificed by sale for division of the proceeds within the usual administration. Therefore, the delay provided was for the benefit of the estate of the beneficiaries, (not to their detriment) and not to create a period of possible forfeiture by the death of one of the survivors.

The conclusion is that the children and grandchildren of the testatrix, all of whom were living at the time of her death, took vested transmissible interests in the residue of the estate, hence the judgment appealed from is reversed.

This Court acknowledges the services of Attorneys T. R. Benedum, Person E. Woodall, and Paul W. Updegraff, who as Special Masters aided in the preparation of this opinion. These attorneys were recommended by the Oklahoma Bar Association, approved by the Judicial Council, and appointed by the Court.

JOHNSON, V. C. J., and WELCH, CORN, ARNOLD, and O'NEAL, JJ., concur.

HALLEY, C. J., and DAVISON, WILLIAMS and BLACKBIRD, JJ., dissent.

WILLIAMS, Justice (dissenting).

I am unable to agree with the majority opinion in this case. It holds the word "receiving" in clause 10 of the will is so indefinite and uncertain as to render the entire clause ambigious and void. No such contention was advanced by either party and the case was not tried in the lower court or briefed in this court on such a theory. All parties to this action assumed that the clause is valid and applied to the legacy of each child and the children of the deceased daughter up to $30,000, but they disagreed as to whether it applied to the residue or remainder in excess of $30,000.

Furthermore, I cannot agree that the word "receiving" is ambiguous. It is not a little-used scientific word nor is it one that has several possible meanings in normal, customary usage. Rather, the word "receiving" is a common English word constantly used by English-speaking peoples everywhere. Black's Law Dictionary defines "receive" as "to take into possession and control; accept custody. of." The Century Dictionary defines the word "receive" as "to take into one's hand or one's possession."

84 O.S.1951 § 158, provides:

"The words of a will are to be taken in their ordinary and grammatical sense unless a clear intention to use them in another sense can be collected, and that other can be ascertained."

There is certainly nothing in the will in question which would indicate any intention of the testatrix to use the word "receiving" in any sense other than its ordinary and grammatical one. We are therefore required by the statute above quoted to attribute to the use of the word "receiving" its ordinary and grammatical sense, which is something that can be readily ascertained, if not already known, and the word could therefore not possibly be ambiguous.

The majority opinion further holds that the word "receiving", as used in the clause in the will providing for lapse of legacies in case of legatee's death before legacy is received, is inconsistent and repugant to the words of absolute gift and the clause is, therefore, void for ambiguity. The vice in this holding is that there are no words of absolute gift in the will in question with regard to the part of the estate in controversy. In this connection, it should be noted that paragraph eight of the will devises and bequeaths all of the remainder of the estate to Waldemar N. Dannenburg, son

of testatrix, to be held by him in trust for the uses and purposes set out in the will. There are no words of absolute gift so far as the beneficiaries of the trust are concerned. The only words of gift, in so far as said beneficiaries are concerned, are found in the direction to the trustee to convert the property into cash and divide or pay the same over at a future time to the specified beneficiaries. Under such circumstances, the almost universal rule is that the interest of the beneficiaries is future, not immediate, and contingent, not vested. See 33 Am.Jur. 568. Furthermore, this rule, usually referred to as the "divide and pay over rule", is one that is applied as a rule of construction in cases where the intention of the testator is not clear or is not expressed in the will. It is not even necessary in the case at bar to rely on this rule of construction, since the will in question very plainly expresses the intention of the testatrix in simple, ordinary English words which are not subject to more than one reasonable construction.

It is fundamental that the construction of a will is to be determined by ascertaining the intention of the testator and by carrying that intention into effect and that the intention is to be gathered from the whole instrument, the language used and the sense in which it is employed. Cunningham v. Fidelity Nat. Bank of Okl., 186 Okl. 429, 98 P.2d 57; 33 Am.Jur. 557.

The will in question is set out in full in the majority opinion. By paragraphs eight and nine testatrix devised and bequeathed all her property in trust to be distributed as directed in paragraph nine and subsequent paragraphs. By paragraph ten she disposed of any portion of the specific $30,-000 legacies (or such specific and the residuary legacies depending upon one's interpretation of the paragraph) remaining undistributed upon the death of any·of her children or the Todds. By paragraph eleven she disposed of any residuary portion of her estate. By paragraph twelve she directed "that any disposition by any beneficiary of any *share* prior to actual distribution shall be absolutely null and void, and that no liens either voluntary or by operation of law can be made to bind the share

of any beneficiary prior to distribution by the trustee * * *." (Emphasis ours.) Testatrix thereby and by devise and bequest to her trustee son in paragraph 8 and by other provisions of her will and codicils thereto, to my mind, demonstrated beyond peradventure of a doubt that she wanted her children to "receive" portions of her property only upon condition they were living to have same distributed to them.

This is borne out particularly in paragraph second of the second codicil wherein, after referring to the "specific bequest" to her daughter, Alice, testatrix says, "This is done to equalize the bequests to each of the other children and grandchildren. I also direct that the children of a deceased child of mine shall take the *share* of such child by right of representation, that is *the share which would have gone to such deceased child of mine,* shall pass to and vest in, the child or children of such deceased child of mine by right of representation". (Emphasis ours.)

Note the change in paragraph twelve and paragraph second of the second codicil from use of "legacy" and "bequest" to "share".

Truly and through, the will expresses the intention of the testatrix that the interest of the named beneficiaries be future, not immediate, and contingent, not vested, by making further disposition of the share of any beneficiary remaining undistributed upon the death of such contingent beneficiary. Such provisions are in the nature of a "condition precedent", and are specifically authorized by statute. 84 O.S. 1951 §§ 179, 180 and 181, provide that where a testamentary disposition is made upon a condition precedent nothing vests until the condition is fulfilled. I am of the opinion that the effect of the majority opinion is to say that a testator cannot make provision in his will for a condition precedent or a future vesting of an interest in property bequeathed or devised, and that such holding is in direct contravention of statute.

In the case of Davis v. District Court of Tulsa County, 129 Okl. 236, 264 P. 176, 177, 57 A.L.R. 72, we said:

"No court has power to ignore an act of the Legislature. Hayne v. ⌐Justice's

Court, 82 Cal. 284, 23 P. 125, 16 Am.St. Rep. 114 * * *."

The majority opinion does not mention the paragraphs from which the above quotations are taken although the effect of the opinion is to strike them, respectively, from the will and second codicil. Henry W. G. Dannenburg died testate prior to receiving all of his share of the estate. He attempted to dispose of the undistributed share by will and this court has now held such disposition valid in the face of explicit provisions in the will and codicils to the contrary. The effect of the holding is to take the residuary share which would have gone to a son, had he lived, away from the grandson and blood-heir of the testatrix and give it to the second wife of such deceased son of testatrix, which is obviously just the opposite of the distribution intended by testatrix.

I am of the opinion that the trial court correctly construed the will in question in accordance with the plainly expressed intention of the testatrix as revealed by the four corners of the will and that the judgment should therefore be affirmed.

I therefore respectfully dissent.