OSCN Found Document:IN THE MATTER OF THE ESTATE OF BOSWORTH

 
 
 

 
 
 
 
 
 
 
 

 


 
 
 
 
 
 


 
 OSCN navigation


 
 
 Home

 
 Courts

 
 
 Court Dockets
 

 
 Legal Research

 
 Calendar

 
 Help
 
 





 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 
 
 

 
 
 
 IN THE MATTER OF THE ESTATE OF BOSWORTH
2015 OK CIV APP 3
Case Number: 111667; Consol. w/111737
Decided: 12/11/2014
Mandate Issued: 01/07/2015
DIVISION IV
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION IV
Cite as: 2015 OK CIV APP 3, __ P.3d __

 

IN THE MATTER OF THE ESTATE OF CAROLYN BOSWORTH, a/k/a CAROLYN KEYS BOSWORTH CRONE, Deceased.

DANIEL F. BOSWORTH, CHESTER A. THAYER, FRANK DE ROSSITT ROBINSON, III, DAVID M. ROBINSON, JANE MARIE ROBINSON NEIDENFEUHR, JAMES RUSSELL ROBINSON, KATHERINE ELIZABETH ROBINSON COLLINS, SARAH LEIGH ROBINSON BLOOM, JOSEPH CLARKSON MILLSPAUGH, and JULIE MILLSPAUGH BEARD, Appellants,
v.
JAMES A. PARKS, Personal Representative of the Estate of Carolyn Bosworth, Deceased, Appellee.



APPEAL FROM THE DISTRICT COURT OF OKLAHOMA COUNTY, OKLAHOMA

HONORABLE TIMOTHY R. HENDERSON, TRIAL JUDGE



AFFIRMED



Jack S. Dawson, Mary M. Caldwell, Brycie M. Loepp, MILLER DOLLARHIDE, P.C., Oklahoma City, Oklahoma, for Appellants
James C. Bass, A. Gabriel Bass, Kevin H. Cunningham, BASS LAW, Oklahoma City, Oklahoma, and
Dan Barney, DAN BARNEY, PLLC, Pauls Valley, Oklahoma, for Appellee




JANE P. WISEMAN, PRESIDING JUDGE:


¶1 Chester A. Thayer, Frank De Rossitt Robinson, III, David M. Robinson, Jane Marie Robinson Neidenfeuhr, James Russell Robinson, Katherine Elizabeth Robinson Collins, Sarah Leigh Robinson Bloom, Joseph Clarkson Millspaugh, and Julie Millspaugh Beard (Freeman family) appeal from a trial court order overruling their "New Objection on Behalf of the 'Freeman Family' to Final Account and Petition for Final Determination of Heirs, Devisees and Legatees, Distribution of Estate and Discharge of Personal Representative," and Daniel F. Bosworth appeals from an "Order Allowing Final Account and Petition for Final Determination of Heirship And Distribution of Personal Property of the Estate." The primary issues on appeal are whether the trial court's decisions (1) overruling the objections to the Final Account and Petition for Final Determination of Heirs, Devisees and Legatees, Distribution of Estate and Discharge of Personal Representative Final Account, and (2) allowing the Final Account and Petition for Final Determination of Heirship and Distribution of Personal Property of the Estate are contrary to a governing principle of law or clearly contrary to the evidence in this case. We find the trial court's decisions are neither contrary to the weight of the evidence nor contrary to law, and we affirm its decisions.

FACTS AND PROCEDURAL BACKGROUND

¶2 Daniel Bosworth petitioned the District Court of Oklahoma County for probate of the Will of Carolyn Bosworth a/k/a Carolyn Keys Bosworth Crone (Decedent). James Albert Parks filed an objection to the petition for probate alleging Decedent died on June 9, 2010, and left a last will and testament dated April 23, 2010, naming James Parks as the personal representative. James Parks attached to his objection a document titled the "Last Will and Testament of Carolyn Keyes Bosworth," dated April 23, 2010 (Will). Article II of the Will titled "Specific Bequests" states, "I hereby give and bequeath the following special gifts prior to the distributions that follow in later sections of this Will" and provides for $5,000 cash to each of the following organizations and individuals: the Pauls Valley Depot, PAWS, Kolap Gambari, and Mercedes Barron. Decedent directed that all of her jewelry be sold with the exception of a specific necklace to be given to Adrienne Grimmett, if she survives Decedent, and for Patrick Grimmett to be allowed to purchase a painting from the estate. Decedent bequeathed $30,000 to be set aside in a trust to be known as "The Carolyn Bosworth Education Trust" and appointed Patrick Grimmett as trustee. She directed the division of the trust into equal parts for Kelsey Paige Morris, Marcae Dominion Watson, and Marquie Devaroe Watson. This section of the Will also states:



I have carefully considered gifts to the following named persons and wish to confirm that it is my intent that the total sum of One Dollar ($1.00) be the total amount of gift given by my estate to the following named persons: my brother, Dan Bosworth; Bill Robinson; Brett Robinson; Mildred Mil[l]spaugh; my step-brother, Tom Bosworth; my step-brother, Peter Bosworth.



Decedent also provided that if any individual or organization should predecease her or not exist at the time of her death, the gift to that individual or organization "shall lapse and become a part of my residuary distributions."

¶3 Under the heading "Article III Residuary Distributions," section 3.1 provides:



I hereby give, devise and bequeath all the rest and residue of my property, whether the same be real, personal or mixed, wheresoever situated, unto Stephenie Ann Parks of Pauls Valley, Oklahoma. If Stephenie Ann Parks predeceases me or fails to survive for sixty (60) days after my death, then I direct that all the rest and residue of my property, whether the same be real or personal be given, devised and bequeathed to Mary Jane Pope. In the event that Stephenie Ann Parks and Mary Jane Pope both predecease me or fail to survive for sixty (60) days after my death, then I direct that all the rest and residue of my property, whether the same be real or personal be given to Brandon James Parks and Jonathan Kyle Parks, per stirpes, in equal shares, share and share alike. If either predeceases me with no lineal descendants, then the entire residuary shall be distributed to the survivor. In every case, if said distribution is a mineral interest and is made to any beneficiary, said distribution shall be made as the sole and separate property of that beneficiary and said beneficiary shall maintain said interest as their sole and separate property. It is the intent of the Testatrix that such interests be retained within the Freeman family and not be alienated from the family by divorce.[1]



Decedent nominated James Parks as personal representative. Exhibit B to the Will provides the names, addresses, and relationships to Decedent of the individuals and organizations listed in the Will. These are the individuals designated as relatives and their relationships to Decedent: Dan Bosworth, (Brother), Tom Bosworth (Step-Brother), Peter Bosworth (Step-Brother), Bill Robinson (Cousin), Brett Robinson (Cousin), Mildred Millspaugh (Cousin), Stephenie Ann Parks (Cousin), Mary Jane Pope (Cousin), Brandon James Parks (Cousin), and Jonathon Kyle Parks (Cousin).

¶4 Although Daniel Bosworth filed an objection to James Parks' petition for probate of the Will, he later withdrew his objection. The trial court's order admitting the Will to probate was filed on November 16, 2010. The court denied the petition for probate filed by Daniel Bosworth.

¶5 On September 13, 2012, James Parks filed a "Final Account and Petition for Final Determination of Heirs, Devisees and Legatees, Distribution of Estate and Discharge of Personal Representative." On October 5, 2012, Daniel Bosworth filed an objection to that Final Account and Petition for Final Determination, Distribution and Discharge in which he asserts that Decedent's Will states that it was her intent for her mineral interests to remain within the Freeman family and Stephenie Parks is not a member of the Freeman family. He claims that Decedent's mineral interests were not devised to anyone in the Will and should be distributed to the members of the Freeman family. Daniel attached a chart depicting a family tree indicating Stephenie is not a member of the Freeman family.

¶6 In his trial brief, James Parks claims, "The assets owned by [Decedent] at her death consisted primarily of over 260 separately described mineral interests that she had inherited from family members." In that same brief, he states the mineral interests were not specifically devised in the Will "making it apparent that she intended her substantial portfolio of mineral interests to pass under the residuary provisions in Article III of her Will." James Parks claims the mineral interests passed to Stephenie Parks as the primary residuary beneficiary.

¶7 Daniel Bosworth states in his brief that "[if] Decedent did believe that Stephenie Ann Parks was a member of the 'Freeman Family,' Mr. Bosworth contends that Decedent was suffering from an insane delusion which materially affected the will and which is sufficient to invalidate the will." He asserts "The Freeman Family Limitation is not void or unenforceable."

¶8 At a hearing held on December 27, 2012, James Parks testified that he is the personal representative of Decedent's estate and the husband of Stephenie Parks. He testified that Decedent was not married and had no children at the time of her death when she was 48 years old. Decedent's nearest relative at the time of her death was Daniel Bosworth, her brother Ben Bosworth having predeceased her. James testified that Stephenie and her mother, Mary Jane, looked after Decedent before she died.

¶9 Dan Barney testified he prepared the Will for Decedent. He stated Decedent had a previous will that "essentially gave the mineral interest to Stephenie Parks." He told the court that he prepared the Will because Decedent wanted to add some charitable gifts and "to add some provisions that would protect the distributions and . . . to ensure that they got to the persons that she wanted them to get to." Barney stated that the language regarding the distribution of the mineral interest "was included at [Decedent's] request because she was concerned that in the event of a divorce in the family of one of the beneficiaries that she wanted to keep the mineral interests in the family." Barney stated, "The word Freeman family was put in there by me." He agreed that Decedent was concerned that if Stephenie or one of the other beneficiaries named in the residuary section "were to get divorced that they would somehow lose control of the minerals." Barney testified he told Decedent that such a clause would not be enforceable because "[o]nce that's distributed to a beneficiary the dead hand can't control it any longer." He stated, "But she wanted to put it in there anyway just to emphasize the fact that she wanted that not to be segregated from the family by divorce." Later, Barney replied, "Yes," when he was asked, "And when you chose those words was it your understanding that these beneficiaries that [Decedent] had specifically identified, Stephenie Parks, Mary Jane Pope, that you were covering them in the Freeman family?" A letter introduced as an exhibit at the hearing indicated that Barney informed Decedent that her request regarding the language about divorce "will be difficult to enforce." In the letter, Barney asked Decedent to consider a trust for the mineral interests.

¶10 In an order dated January 15, 2013, the court stated:



It is clear and certain that [Decedent] intended that her brother, Dan Bosworth, receive the total sum of $1.00 from her estate. . . . It is equally clear that [Decedent] intended that all rest and residue of her property (after that which is specifically given in her will) go to Stephenie Ann Parks and should Stephenie Ann Parks predecease [Decedent] or fail to survive for sixty days after her death, then said property would be given to Ms. Parks['] mother, Mary Jane Pope. . . . All the rest and residue of her property to which [Decedent] mentions would include various mineral interests.



The court noted Barney's testimony about Decedent's concern over a divorce of a beneficiary and his effort to satisfy her concern. The court stated, "Although discussions and draft samples were sent to [Decedent] by Mr. Barney which included other alternatives to protect the mineral interests from being alienated by divorce, [Decedent] did sign her Last Will and Testament . . . with the 'Freeman family' language incorporated therein." The court concluded that based on the Will's language and the testimony and evidence Barney presented, Decedent intended Daniel Bosworth to receive the total sum of $1.00 from her estate and the rest and residue of her property, including the mineral interests, to go to Stephenie Parks.

¶11 On February 15, 2013, a "New Objection" was filed on behalf of the "Freeman Family," consisting of Chester A. Thayer, Frank De Rossitt Robinson, III, David M. Robinson, Jane Marie Robinson Neidenfeuhr, James Russell Robinson, Katherine Elizabeth Robinson Collins, Sarah Leigh Robinson Bloom, Joseph Clarkson Millspaugh and Julie Millspaugh Beard. They allege they did not receive a copy of the Final Account and Petition for Final Determination of Heirs, Devisees and Legatees, Distribution of Estate and Discharge of Personal Representative from the attorney for the personal representative or from any other source. They claim they are beneficiaries under the Will as they "are 'the Freeman family' as that term is meant in the will." They allege Stephenie Parks is not a member of the Freeman family. They assert the plain language of the Will shows that Decedent "wanted her mineral interests to remain in the Freeman family" and "[s]ince Stephanie [sic] Ann Parks is not a member of the Freeman family, [Decedent] could not have meant for the mineral interests to pass to her."

¶12 After a hearing, the trial court overruled the Freeman family's objection on March 21, 2013. On April 22, 2013, the trial court entered an "Order Allowing Final Account and Petition for Final Determination of Heirship and Distribution of Personal Property of the Estate." The court noted that the members of the Freeman family had filed a petition in error with the Oklahoma Supreme Court appealing the March 21, 2013, order denying their objection to the Final Account and Petition for Final Determination of Heirs, Devisees and Legatees, Distribution of Estate and Discharge of Personal Representative. The trial court's order sets out the distributions to creditors, expenses for legal and accounting fees, and specific bequests. Regarding the residuary distributions, the order states that all of the remaining property, including the mineral interests, is to be distributed to Stephenie Parks. The court, however, stayed the distribution of the mineral interests pending resolution of the appeal.

¶13 The members of the Freeman family filed a petition in error in Case No. 111,667, appealing the trial court's decision overruling their objection to the Final Account and Petition for Final Determination of Heirs, Devisees and Legatees, Distribution of Estate and Discharge of Personal Representative and later filed an amended petition in error to appeal the "Order Allowing Final Account and Petition for Final Determination of Heirship and Distribution of Personal Property of the Estate." Daniel Bosworth filed a petition in error in Case No. 111,737, appealing the April 22, 2013, "Order Allowing Final Account and Petition for Final Determination of Heirship and Distribution of Personal Property of the Estate." The Supreme Court granted Appellants' motion to consolidate the two appeals under surviving Case No. 111,667.

STANDARD OF REVIEW

¶14 "Probate proceedings are of equitable cognizance." In re Estate of Holcomb, 2002 OK 90, ¶ 8, 63 P.3d 9; see also In re Estate of Worsham, 1993 OK CIV APP 122, ¶ 9, 859 P.2d 1134 ("Actions involving will construction are equitable in nature."). In appeals from probate proceeding decisions, this Court "will examine and weigh the record proof," but we "must abide by the law's presumption that the nisi prius decision is legally correct and cannot be disturbed unless found to be clearly contrary to the weight of the evidence or to some governing principle of law." Holcomb, 2002 OK 90, ¶ 8.

ANALYSIS

¶15 Appellants assert the trial court committed reversible error when it overruled their objection to the Final Account. Specifically, they assert "[it] is clear from the four corners of the Will that [Decedent] intended to bequeath her mineral interests to heirs of the 'Freeman family.'" They claim there is no ambiguity or uncertainty about Decedent's "intent and that intent was for her mineral interests to remain in the Freeman family." They assert that because the Will states Decedent's "intent, extrinsic evidence should not be used to interpret the Will." As discussed below, we agree that extrinsic evidence is not needed to interpret the Will, but disagree with Appellants' assertion that the Will indicates Decedent's intent to leave the mineral interests to the Freemen family.

¶16 "A will is to be construed according to the intention of the testator. Where his intention cannot have effect to its full extent, it must have effect as far as possible." 84 O.S.2011 § 151. "In case of uncertainty, arising upon the face of a will, as to the application of any of its provisions, the testator's intention is to be ascertained from the words of the will, taking into view the circumstances under which it was made, exclusive of his oral declarations." 84 O.S.2011 § 152.

¶17 The Freeman family maintains that the gift to them appears after the gift to Stephenie Parks and the gift to the Freeman family controls over the gift to Stephenie Parks. They further assert Stephenie Parks is not a member of the Freeman family and Decedent therefore did not intend for the minerals to pass to her. We conclude there is no need to consider evidence outside the Will to ascertain Decedent's intent regarding the mineral interests.

¶18 The statutory provision most applicable to the interpretation of the Will is 84 O.S.2011 § 156, which provides:



A clear and distinct devise or bequest cannot be affected by any reasons assigned therefor, or by any other words not equally clear and distinct, or by inference or argument from other parts of the will, or by an inaccurate recital of or reference to its contents in another part of the will.



Decedent's devise and bequest of the residue of her estate, including real and personal property, to Stephenie Parks is clear and distinct and is not affected by the general statements coming after that devise and bequest. The devise and bequest of the residue of the estate is not affected by the statement that the mineral interests should be the sole and separate property of the beneficiary. This bequest is also not affected by the Will's provision in its residuary portion stating, "In every case, if said distribution is a mineral interest and is made to any beneficiary, said distribution shall be made as the sole and separate property of that beneficiary and said beneficiary shall maintain said interests as their sole and separate property." This statement does not go to the actual devise of the mineral interests but indicates how the mineral interests should be treated as to the beneficiary named in the residuary clause who ultimately receives the residue of Decedent's property. As evidenced by the next sentence in the Will, Decedent is concerned about the ownership of the mineral interests by the beneficiary in case of a divorce. Specifically, the Will states, "It is the intent of Testatrix that such interests be retained within the Freeman family and not be alienated from the family by divorce." There is no devise of the mineral interests to the Freeman family in the residuary provision or any other provision of the Will.

¶19 Decedent devised and bequeathed all the residue of her property to Stephenie Parks if she survives Decedent for sixty days after Decedent's death. "A devise of the residue of the testator's real property passes all the real property which he was entitled to devise at the time of his death, not otherwise effectually devised by his will." 84 O.S.2011 § 166. Similarly, "[a] bequest of the residue of the testator's personal property passes all the personal property which he was entitled to bequeath at the time of his death not otherwise effectually bequeathed by his will." 84 O.S.2011 § 167. Stephenie Parks survived Decedent for sixty days after her death. The Will therefore directs that all of the rest and residue of Decedent's property, both real and personal, be given to Stephenie Parks. This includes mineral interests, as indicated by the portion of the residuary clause stating, "In every case, if said distribution is a mineral interest and is made to any beneficiary, said distribution shall be made as the sole and separate property of that beneficiary and said beneficiary shall maintain said interests as their sole and separate property."

¶20 If Decedent had, in fact, intended to devise the mineral interests to the Freeman family, she had the opportunity and legal assistance to do so; however, the Will makes no devise or bequest to the Freeman family, but instead only mentions that it is the Decedent's intent that mineral "interests be retained within the Freeman family." This statement is not enough to overcome the earlier specific devise and bequest of the residue of the property to Stephenie Parks.

¶21 Our conclusion is supported by case law interpreting Oklahoma statutory law. In Ferguson v. Patterson, 191 F.2d 584, 585-86 (10th Cir. 1951), the United States Court of Appeals for the Tenth Circuit was required to interpret a will containing the following provisions:



"(4) All the rest, residue and remainder of my property, both real and personal, and however described and wherever situated, and whether vested or contingent, I give, devise and bequeath to J. A. Patterson, the same to be his absolutely.

(5) I desire that the land owned by me and situated in Section Seven (7) and Eight (8), Township Seven North (7N), Range Eight East (8E), Seminole and Hughes Counties, Oklahoma, shall be operated and managed in such a way as to set an example to those interested in soil conservation and better farming methods and development and propagation of pasture grasses.

(6) I desire that my residuary beneficiary, J. A. Patterson, shall give to Father Flanagan's Boys Home, Boys Town, Nebraska, or some similar institution to be selected by him, such part of my personal estate and the income from my real estate as in his opinion can be spared for that purpose, the amounts of such payments and the times of making the same to be determined solely by J. A. Patterson. I repose special faith and confidence in my friend and attorney, J. A. Patterson, and he is named as the principal beneficiary in this will in order that he may carry out my personal desires, and he is to exercise his own judgment at all times."



The plaintiffs there argued that it was not the testator's intention "to vest the residue of his estate in Patterson as his absolute property." Id. at 587. Citing 84 O.S. § 156, which has remained unchanged since the statute was enacted in 1910, the Court held:



The residuary devise to Patterson in paragraph 4 of the will was clear, unambiguous and distinct in its terms. The subsequent two clauses upon which appellants seek to establish their rights were vague, ambiguous and indistinct. A well settled rule of construction applied to wills is that an absolute estate or certain specific interest given to a devisee by clear and unambiguous language will not be cut down, affected, impaired, or qualified in the same or a subsequent provision by inference or argument, but will be qualified or cut down only by words equally clear and distinct as the words constituting the devise, whether such words are contained in the same or a separate provision.



Id. The Court found, "The desires expressed by [the testator] in the fifth and sixth clauses of his will were not charges upon Patterson's interest, notwithstanding Patterson was subsequently named executor." Id. at 587-88. The Court concluded that the fifth and sixth clauses "only stated [the testator's] desires" in which he "intended to leave the disposition of the residue of his estate to Patterson without restriction." Id. at 588. The Court held, "The language was only precatory and was not sufficiently clear to show an intention on the part of the testator to create a trust or to limit the absolute devise to Patterson." Id.

¶22 In Shippy v. Elliott, 1958 OK 126, ¶ 0, 327 P.2d 645 (syl. no. 2 by the Court), the Supreme Court held, "Where an estate is given in will by clear and decisive terms it will not be taken away or cut down by subsequent clause, unless subsequent clause is as positive as the words giving the estate." The will in Shippy in part provided:



"(2) I give and devise to my beloved wife, Alice Kate Elliott, the following property, to-wit: The Southeast Quarter (SE 1/4) of Section Twelve (12), Township Twenty-three (23) North, of Range Twelve (12) W.I.M., Alfalfa County, Oklahoma;

. . . .

(6) I give, bequeath and devise all the rest and residue of my property, both personal and real, and wheresoever situated, of which I may die seized to my beloved wife, and our three children, above named, in equal shares;

(7) It is my will and desire that all property herein devised, and bequeathed to my beloved wife, Alice Kate Elliott, that shall remain her property at the time of her death, shall be equally divided among our said three children in equal shares."



Id. ¶ 1. The Court found "that paragraph 2 of the will is clear and unambiguous." Id. ¶ 15. The Court rejected the contention that the bequests to the wife were for life. Id. ¶ 21. The Court notes that paragraph 7 does not use the word devise or bequeath but only expresses a desire for property left at the time of the wife's death to be divided equally among the children. Id. ¶ 13. The Court quoted Dannenburg v. Dannenburg, 1953 OK 201, ¶ 28, 271 P.2d 346, for the proposition that:



"Where an estate has been given in an earlier part of the will and is clear and definite, construction will not give a strained and unnatural effect to the language occurring in subsequent paragraphs in order to cut down or impair the integrity of the gift, where the subsequent language is not definite and certain, but, on the other hand, is doubtful and ambiguous."



Id. ¶ 16.

¶23 In Hugo v. Giacomo, 1970 OK CIV APP 3, ¶ 15, 465 P.2d 787, the Supreme Court explained that "[w]hen an estate is given the bequest should not be cut down by raising doubt as to extent, meaning or application of a subsequent clause, or words, which are not as clear or decisive as those used in granting the estate."

¶24 We conclude that Decedent's devise of the entire residue of her property to Stephenie Parks may not be cut down by the general statement later in the residuary clause evincing Decedent's intent that the mineral interests be "retained within the Freeman family" and not alienated by divorce. The "retained within the Freeman family" phrase contains no devise or bequest and the words are not as clear, positive or decisive as those devising the residue of the Decedent's property to Stephenie Parks.

¶25 The trial court properly overruled Appellants' objections to the Order Allowing Final Account and Petition for Final Determination of Heirship and Distribution of Personal Property of the Estate. The Will clearly left the residue of Decedent's estate, including the mineral interests, to Stephenie Parks, as the trial court so found. We find no error in the trial court's distribution of Decedent's mineral interests to Stephenie Parks pursuant to the Will. Accordingly, we affirm both the order overruling Appellants' objections and the Order Allowing Final Account and Petition for Final Determination of Heirship and Distribution of Personal Property of the Estate.

¶26 James Parks' request for costs and attorney fees on appeal is raised in his appellate brief and not in a separately filed and labeled motion as required by Supreme Court Rule 1.14(A),(B), 12 O.S. Supp. 2014, ch. 15, app. 1. The request is therefore denied without prejudice to its reassertion in compliance with Supreme Court Rule 1.14.

CONCLUSION

¶27 The trial court's orders are not contrary to the clear weight of the evidence or contrary to law, and we therefore affirm.


¶28 AFFIRMED.



BARNES, C.J., and GOODMAN, J., concur.



FOOTNOTES


[1] We note Stephanie is spelled both "Stephanie" and "Stephenie" in the record. We will use "Stephenie."










 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 1993 OK CIV APP 122, 859 P.2d 1134, 64 OBJ 2995, Estate of Worsham, Matter of
Discussed
 1970 OK CIV APP 3, 465 P.2d 787, HUGO v. GIACOMO
Discussed
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1953 OK 201, 271 P.2d 345, DANNENBURG v. DANNENBURG
Cited
 1958 OK 126, 327 P.2d 645, SHIPPY v. ELLIOTT
Discussed
 2002 OK 90, 63 P.3d 9, IN THE MATTER OF THE ESTATE OF HOLCOMB
Discussed at Length
Title 84. Wills and Succession
 Cite
Name
Level

 84 O.S. 151, Will Construed According to Testator's Intent
Cited
 84 O.S. 152, Ascertaining the Testator's Intent
Cited
 84 O.S. 156, Distinct Devise Not Affected by Inference from Other Parts of the Will
Discussed
 84 O.S. 166, Residual Estate of Real Property
Cited
 84 O.S. 167, Residual Estate of Personal Property
Cited