OSCN Found Document:IN THE MATTER OF THE ESTATE OF BOSWORTH

 
 
 

 
 
 
 
 
 
 
 

 


 
 
 
 
 
 


 
 OSCN navigation


 
 
 Home

 
 Courts

 
 Court Dockets

 
 Legal Research

 
 Calendar

 
 Help
 
 





 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 
 
 

 
 
 
 IN THE MATTER OF THE ESTATE OF BOSWORTH
2015 OK CIV APP 3
Case Number: 111667; Consol. w/111737
Decided: 12/11/2014
Mandate Issued: 01/07/2015
DIVISION IV
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION IV
Cite as: 2015 OK CIV APP 3, __ P.3d __

 

IN THE MATTER OF THE ESTATE OF CAROLYN BOSWORTH, a/k/a CAROLYN 
KEYS BOSWORTH CRONE, Deceased.
DANIEL F. BOSWORTH, CHESTER A. THAYER, FRANK DE ROSSITT 
ROBINSON, III, DAVID M. ROBINSON, JANE MARIE ROBINSON NEIDENFEUHR, JAMES RUSSELL 
ROBINSON, KATHERINE ELIZABETH ROBINSON COLLINS, SARAH LEIGH ROBINSON BLOOM, 
JOSEPH CLARKSON MILLSPAUGH, and JULIE MILLSPAUGH BEARD, 
Appellants,
v.
JAMES A. PARKS, Personal Representative of the Estate of 
Carolyn Bosworth, Deceased, Appellee.
APPEAL FROM THE DISTRICT COURT OF OKLAHOMA COUNTY, OKLAHOMA
HONORABLE TIMOTHY R. HENDERSON, TRIAL JUDGE
AFFIRMED
Jack S. Dawson, Mary M. Caldwell, Brycie M. Loepp, MILLER DOLLARHIDE, P.C., 
Oklahoma City, Oklahoma, for Appellants
James C. Bass, A. Gabriel Bass, Kevin 
H. Cunningham, BASS LAW, Oklahoma City, Oklahoma, and
Dan Barney, DAN BARNEY, 
PLLC, Pauls Valley, Oklahoma, for Appellee
JANE P. WISEMAN, PRESIDING JUDGE:
¶1 Chester A. Thayer, Frank De Rossitt Robinson, III, David M. Robinson, Jane 
Marie Robinson Neidenfeuhr, James Russell Robinson, Katherine Elizabeth Robinson 
Collins, Sarah Leigh Robinson Bloom, Joseph Clarkson Millspaugh, and Julie 
Millspaugh Beard (Freeman family) appeal from a trial court order overruling 
their "New Objection on Behalf of the 'Freeman Family' to Final Account and 
Petition for Final Determination of Heirs, Devisees and Legatees, Distribution 
of Estate and Discharge of Personal Representative," and Daniel F. Bosworth 
appeals from an "Order Allowing Final Account and Petition for Final 
Determination of Heirship And Distribution of Personal Property of the Estate." 
The primary issues on appeal are whether the trial court's decisions (1) 
overruling the objections to the Final Account and Petition for Final 
Determination of Heirs, Devisees and Legatees, Distribution of Estate and 
Discharge of Personal Representative Final Account, and (2) allowing the Final 
Account and Petition for Final Determination of Heirship and Distribution of 
Personal Property of the Estate are contrary to a governing principle of law or 
clearly contrary to the evidence in this case. We find the trial court's 
decisions are neither contrary to the weight of the evidence nor contrary to 
law, and we affirm its decisions. 
FACTS AND PROCEDURAL BACKGROUND
¶2 Daniel Bosworth petitioned the District Court of Oklahoma County for 
probate of the Will of Carolyn Bosworth a/k/a Carolyn Keys Bosworth Crone 
(Decedent). James Albert Parks filed an objection to the petition for probate 
alleging Decedent died on June 9, 2010, and left a last will and testament dated 
April 23, 2010, naming James Parks as the personal representative. James Parks 
attached to his objection a document titled the "Last Will and Testament of 
Carolyn Keyes Bosworth," dated April 23, 2010 (Will). Article II of the Will 
titled "Specific Bequests" states, "I hereby give and bequeath the following 
special gifts prior to the distributions that follow in later sections of this 
Will" and provides for $5,000 cash to each of the following organizations and 
individuals: the Pauls Valley Depot, PAWS, Kolap Gambari, and Mercedes Barron. 
Decedent directed that all of her jewelry be sold with the exception of a 
specific necklace to be given to Adrienne Grimmett, if she survives Decedent, 
and for Patrick Grimmett to be allowed to purchase a painting from the estate. 
Decedent bequeathed $30,000 to be set aside in a trust to be known as "The 
Carolyn Bosworth Education Trust" and appointed Patrick Grimmett as trustee. She 
directed the division of the trust into equal parts for Kelsey Paige Morris, 
Marcae Dominion Watson, and Marquie Devaroe Watson. This section of the Will 
also states:


I have carefully considered gifts to the following named persons and wish to 
confirm that it is my intent that the total sum of One Dollar ($1.00) be the 
total amount of gift given by my estate to the following named persons: my 
brother, Dan Bosworth; Bill Robinson; Brett Robinson; Mildred Mil[l]spaugh; 
my step-brother, Tom Bosworth; my step-brother, Peter 
Bosworth. 
Decedent also provided that if any individual or organization should 
predecease her or not exist at the time of her death, the gift to that 
individual or organization "shall lapse and become a part of my residuary 
distributions." 
¶3 Under the heading "Article III Residuary Distributions," section 3.1 
provides:


I hereby give, devise and bequeath all the rest and residue of my property, 
whether the same be real, personal or mixed, wheresoever situated, unto 
Stephenie Ann Parks of Pauls Valley, Oklahoma. If Stephenie Ann 
Parks predeceases me or fails to survive for sixty (60) days after my death, 
then I direct that all the rest and residue of my property, whether the same be 
real or personal be given, devised and bequeathed to Mary Jane Pope. In 
the event that Stephenie Ann Parks and Mary Jane Pope both 
predecease me or fail to survive for sixty (60) days after my death, then I 
direct that all the rest and residue of my property, whether the same be real or 
personal be given to Brandon James Parks and Jonathan Kyle Parks, 
per stirpes, in equal shares, share and share alike. If either predeceases me 
with no lineal descendants, then the entire residuary shall be distributed to 
the survivor. In every case, if said distribution is a mineral interest and is 
made to any beneficiary, said distribution shall be made as the sole and 
separate property of that beneficiary and said beneficiary shall maintain said 
interest as their sole and separate property. It is the intent of the Testatrix 
that such interests be retained within the Freeman family and not be alienated 
from the family by divorce.[1] 
Decedent nominated James Parks as personal representative. Exhibit B to the 
Will provides the names, addresses, and relationships to Decedent of the 
individuals and organizations listed in the Will. These are the individuals 
designated as relatives and their relationships to Decedent: Dan Bosworth, 
(Brother), Tom Bosworth (Step-Brother), Peter Bosworth (Step-Brother), Bill 
Robinson (Cousin), Brett Robinson (Cousin), Mildred Millspaugh (Cousin), 
Stephenie Ann Parks (Cousin), Mary Jane Pope (Cousin), Brandon James Parks 
(Cousin), and Jonathon Kyle Parks (Cousin).
¶4 Although Daniel Bosworth filed an objection to James Parks' petition for 
probate of the Will, he later withdrew his objection. The trial court's order 
admitting the Will to probate was filed on November 16, 2010. The court denied 
the petition for probate filed by Daniel Bosworth.
¶5 On September 13, 2012, James Parks filed a "Final Account and Petition for 
Final Determination of Heirs, Devisees and Legatees, Distribution of Estate and 
Discharge of Personal Representative." On October 5, 2012, Daniel Bosworth filed 
an objection to that Final Account and Petition for Final Determination, 
Distribution and Discharge in which he asserts that Decedent's Will states that 
it was her intent for her mineral interests to remain within the Freeman family 
and Stephenie Parks is not a member of the Freeman family. He claims that 
Decedent's mineral interests were not devised to anyone in the Will and should 
be distributed to the members of the Freeman family. Daniel attached a chart 
depicting a family tree indicating Stephenie is not a member of the Freeman 
family. 
¶6 In his trial brief, James Parks claims, "The assets owned by [Decedent] at 
her death consisted primarily of over 260 separately described mineral interests 
that she had inherited from family members." In that same brief, he states the 
mineral interests were not specifically devised in the Will "making it apparent 
that she intended her substantial portfolio of mineral interests to pass under 
the residuary provisions in Article III of her Will." James Parks claims the 
mineral interests passed to Stephenie Parks as the primary residuary 
beneficiary. 
¶7 Daniel Bosworth states in his brief that "[if] Decedent did believe that 
Stephenie Ann Parks was a member of the 'Freeman Family,' Mr. Bosworth contends 
that Decedent was suffering from an insane delusion which materially affected 
the will and which is sufficient to invalidate the will." He asserts "The 
Freeman Family Limitation is not void or unenforceable." 
¶8 At a hearing held on December 27, 2012, James Parks testified that he is 
the personal representative of Decedent's estate and the husband of Stephenie 
Parks. He testified that Decedent was not married and had no children at the 
time of her death when she was 48 years old. Decedent's nearest relative at the 
time of her death was Daniel Bosworth, her brother Ben Bosworth having 
predeceased her. James testified that Stephenie and her mother, Mary Jane, 
looked after Decedent before she died.
¶9 Dan Barney testified he prepared the Will for Decedent. He stated Decedent 
had a previous will that "essentially gave the mineral interest to Stephenie 
Parks." He told the court that he prepared the Will because Decedent wanted to 
add some charitable gifts and "to add some provisions that would protect the 
distributions and . . . to ensure that they got to the persons that she wanted 
them to get to." Barney stated that the language regarding the distribution of 
the mineral interest "was included at [Decedent's] request because she was 
concerned that in the event of a divorce in the family of one of the 
beneficiaries that she wanted to keep the mineral interests in the family." 
Barney stated, "The word Freeman family was put in there by me." He agreed that 
Decedent was concerned that if Stephenie or one of the other beneficiaries named 
in the residuary section "were to get divorced that they would somehow lose 
control of the minerals." Barney testified he told Decedent that such a clause 
would not be enforceable because "[o]nce that's distributed to a beneficiary the 
dead hand can't control it any longer." He stated, "But she wanted to put it in 
there anyway just to emphasize the fact that she wanted that not to be 
segregated from the family by divorce." Later, Barney replied, "Yes," when he 
was asked, "And when you chose those words was it your understanding that these 
beneficiaries that [Decedent] had specifically identified, Stephenie Parks, Mary 
Jane Pope, that you were covering them in the Freeman family?" A letter 
introduced as an exhibit at the hearing indicated that Barney informed Decedent 
that her request regarding the language about divorce "will be difficult to 
enforce." In the letter, Barney asked Decedent to consider a trust for the 
mineral interests. 
¶10 In an order dated January 15, 2013, the court stated:


It is clear and certain that [Decedent] intended that her brother, Dan 
Bosworth, receive the total sum of $1.00 from her estate. . . . It is equally 
clear that [Decedent] intended that all rest and residue of her property (after 
that which is specifically given in her will) go to Stephenie Ann Parks and 
should Stephenie Ann Parks predecease [Decedent] or fail to survive for sixty 
days after her death, then said property would be given to Ms. Parks['] mother, 
Mary Jane Pope. . . . All the rest and residue of her property to which 
[Decedent] mentions would include various mineral interests. 
The court noted Barney's testimony about Decedent's concern over a divorce of 
a beneficiary and his effort to satisfy her concern. The court stated, "Although 
discussions and draft samples were sent to [Decedent] by Mr. Barney which 
included other alternatives to protect the mineral interests from being 
alienated by divorce, [Decedent] did sign her Last Will and Testament . . . with 
the 'Freeman family' language incorporated therein." The court concluded that 
based on the Will's language and the testimony and evidence Barney presented, 
Decedent intended Daniel Bosworth to receive the total sum of $1.00 from her 
estate and the rest and residue of her property, including the mineral 
interests, to go to Stephenie Parks. 
¶11 On February 15, 2013, a "New Objection" was filed on behalf of the 
"Freeman Family," consisting of Chester A. Thayer, Frank De Rossitt Robinson, 
III, David M. Robinson, Jane Marie Robinson Neidenfeuhr, James Russell Robinson, 
Katherine Elizabeth Robinson Collins, Sarah Leigh Robinson Bloom, Joseph 
Clarkson Millspaugh and Julie Millspaugh Beard. They allege they did not receive 
a copy of the Final Account and Petition for Final Determination of Heirs, 
Devisees and Legatees, Distribution of Estate and Discharge of Personal 
Representative from the attorney for the personal representative or from any 
other source. They claim they are beneficiaries under the Will as they "are 'the 
Freeman family' as that term is meant in the will." They allege Stephenie Parks 
is not a member of the Freeman family. They assert the plain language of the 
Will shows that Decedent "wanted her mineral interests to remain in the Freeman 
family" and "[s]ince Stephanie [sic] Ann Parks is not a member of the 
Freeman family, [Decedent] could not have meant for the mineral interests to 
pass to her." 
¶12 After a hearing, the trial court overruled the Freeman family's objection 
on March 21, 2013. On April 22, 2013, the trial court entered an "Order Allowing 
Final Account and Petition for Final Determination of Heirship and Distribution 
of Personal Property of the Estate." The court noted that the members of the 
Freeman family had filed a petition in error with the Oklahoma Supreme Court 
appealing the March 21, 2013, order denying their objection to the Final Account 
and Petition for Final Determination of Heirs, Devisees and Legatees, 
Distribution of Estate and Discharge of Personal Representative. The trial 
court's order sets out the distributions to creditors, expenses for legal and 
accounting fees, and specific bequests. Regarding the residuary distributions, 
the order states that all of the remaining property, including the mineral 
interests, is to be distributed to Stephenie Parks. The court, however, stayed 
the distribution of the mineral interests pending resolution of the appeal. 
¶13 The members of the Freeman family filed a petition in error in Case No. 
111,667, appealing the trial court's decision overruling their objection to the 
Final Account and Petition for Final Determination of Heirs, Devisees and 
Legatees, Distribution of Estate and Discharge of Personal Representative and 
later filed an amended petition in error to appeal the "Order Allowing Final 
Account and Petition for Final Determination of Heirship and Distribution of 
Personal Property of the Estate." Daniel Bosworth filed a petition in error in 
Case No. 111,737, appealing the April 22, 2013, "Order Allowing Final Account 
and Petition for Final Determination of Heirship and Distribution of Personal 
Property of the Estate." The Supreme Court granted Appellants' motion to 
consolidate the two appeals under surviving Case No. 111,667.
STANDARD OF REVIEW
¶14 "Probate proceedings are of equitable cognizance." In re Estate of 
Holcomb, 2002 OK 
90, ¶ 8, 63 P.3d 
9; 
see also In re Estate of Worsham, 1993 OK CIV APP 122, ¶ 9, 859 P.2d 1134 ("Actions involving will construction are 
equitable in nature."). In appeals from probate proceeding decisions, this Court 
"will examine and weigh the record proof," but we "must abide by the law's 
presumption that the nisi prius decision is legally correct and cannot be 
disturbed unless found to be clearly contrary to the weight of the evidence or 
to some governing principle of law." Holcomb, 2002 OK 90, ¶ 8.
ANALYSIS
¶15 Appellants assert the trial court committed reversible error when it 
overruled their objection to the Final Account. Specifically, they assert "[it] 
is clear from the four corners of the Will that [Decedent] intended to bequeath 
her mineral interests to heirs of the 'Freeman family.'" They claim there is no 
ambiguity or uncertainty about Decedent's "intent and that intent was for her 
mineral interests to remain in the Freeman family." They assert that because the 
Will states Decedent's "intent, extrinsic evidence should not be used to 
interpret the Will." As discussed below, we agree that extrinsic evidence is not 
needed to interpret the Will, but disagree with Appellants' assertion that the 
Will indicates Decedent's intent to leave the mineral interests to the Freemen 
family.
¶16 "A will is to be construed according to the intention of the testator. 
Where his intention cannot have effect to its full extent, it must have effect 
as far as possible." 84 O.S.2011 § 151. "In case of uncertainty, 
arising upon the face of a will, as to the application of any of its provisions, 
the testator's intention is to be ascertained from the words of the will, taking 
into view the circumstances under which it was made, exclusive of his oral 
declarations." 84 O.S.2011 § 
152. 
¶17 The Freeman family maintains that the gift to them appears after the gift 
to Stephenie Parks and the gift to the Freeman family controls over the gift to 
Stephenie Parks. They further assert Stephenie Parks is not a member of the 
Freeman family and Decedent therefore did not intend for the minerals to pass to 
her. We conclude there is no need to consider evidence outside the Will to 
ascertain Decedent's intent regarding the mineral interests.
¶18 The statutory provision most applicable to the interpretation of the Will 
is 84 O.S.2011 § 
156, which provides:


A clear and distinct devise or bequest cannot be affected by any reasons 
assigned therefor, or by any other words not equally clear and distinct, or by 
inference or argument from other parts of the will, or by an inaccurate recital 
of or reference to its contents in another part of the will.
Decedent's devise and bequest of the residue of her estate, including real 
and personal property, to Stephenie Parks is clear and distinct and is not 
affected by the general statements coming after that devise and bequest. The 
devise and bequest of the residue of the estate is not affected by the statement 
that the mineral interests should be the sole and separate property of the 
beneficiary. This bequest is also not affected by the Will's provision in its 
residuary portion stating, "In every case, if said distribution is a mineral 
interest and is made to any beneficiary, said distribution shall be made as the 
sole and separate property of that beneficiary and said beneficiary shall 
maintain said interests as their sole and separate property." This statement 
does not go to the actual devise of the mineral interests but indicates how the 
mineral interests should be treated as to the beneficiary named in the residuary 
clause who ultimately receives the residue of Decedent's property. As evidenced 
by the next sentence in the Will, Decedent is concerned about the ownership of 
the mineral interests by the beneficiary in case of a divorce. Specifically, the 
Will states, "It is the intent of Testatrix that such interests be retained 
within the Freeman family and not be alienated from the family by divorce." 
There is no devise of the mineral interests to the Freeman family in the 
residuary provision or any other provision of the Will. 
¶19 Decedent devised and bequeathed all the residue of her property to 
Stephenie Parks if she survives Decedent for sixty days after Decedent's death. 
"A devise of the residue of the testator's real property passes all the real 
property which he was entitled to devise at the time of his death, not otherwise 
effectually devised by his will." 84 O.S.2011 § 166. Similarly, "[a] bequest 
of the residue of the testator's personal property passes all the personal 
property which he was entitled to bequeath at the time of his death not 
otherwise effectually bequeathed by his will." 84 O.S.2011 § 167. Stephenie Parks survived 
Decedent for sixty days after her death. The Will therefore directs that all of 
the rest and residue of Decedent's property, both real and personal, be given to 
Stephenie Parks. This includes mineral interests, as indicated by the portion of 
the residuary clause stating, "In every case, if said distribution is a mineral 
interest and is made to any beneficiary, said distribution shall be made as the 
sole and separate property of that beneficiary and said beneficiary shall 
maintain said interests as their sole and separate property."
¶20 If Decedent had, in fact, intended to devise the mineral interests to the 
Freeman family, she had the opportunity and legal assistance to do so; however, 
the Will makes no devise or bequest to the Freeman family, but instead only 
mentions that it is the Decedent's intent that mineral "interests be retained 
within the Freeman family." This statement is not enough to overcome the earlier 
specific devise and bequest of the residue of the property to Stephenie Parks. 

¶21 Our conclusion is supported by case law interpreting Oklahoma statutory 
law. In Ferguson v. Patterson, 191 F.2d 584, 585-86 (10th Cir. 1951), the 
United States Court of Appeals for the Tenth Circuit was required to interpret a 
will containing the following provisions:


"(4) All the rest, residue and remainder of my property, both real and 
personal, and however described and wherever situated, and whether vested or 
contingent, I give, devise and bequeath to J. A. Patterson, the same to be his 
absolutely.
(5) I desire that the land owned by me and situated in Section Seven (7) and 
Eight (8), Township Seven North (7N), Range Eight East (8E), Seminole and Hughes 
Counties, Oklahoma, shall be operated and managed in such a way as to set an 
example to those interested in soil conservation and better farming methods and 
development and propagation of pasture grasses. 
(6) I desire that my residuary beneficiary, J. A. Patterson, shall give to 
Father Flanagan's Boys Home, Boys Town, Nebraska, or some similar institution to 
be selected by him, such part of my personal estate and the income from my real 
estate as in his opinion can be spared for that purpose, the amounts of such 
payments and the times of making the same to be determined solely by J. A. 
Patterson. I repose special faith and confidence in my friend and attorney, J. 
A. Patterson, and he is named as the principal beneficiary in this will in order 
that he may carry out my personal desires, and he is to exercise his own 
judgment at all times."
The plaintiffs there argued that it was not the testator's intention "to vest 
the residue of his estate in Patterson as his absolute property." Id. at 
587. Citing 84 O.S. § 
156, which has remained unchanged since the statute was enacted in 1910, the 
Court held:


The residuary devise to Patterson in paragraph 4 of the will was clear, 
unambiguous and distinct in its terms. The subsequent two clauses upon which 
appellants seek to establish their rights were vague, ambiguous and indistinct. 
A well settled rule of construction applied to wills is that an absolute estate 
or certain specific interest given to a devisee by clear and unambiguous 
language will not be cut down, affected, impaired, or qualified in the same or a 
subsequent provision by inference or argument, but will be qualified or cut down 
only by words equally clear and distinct as the words constituting the devise, 
whether such words are contained in the same or a separate 
provision.
Id. The Court found, "The desires expressed by [the testator] in the 
fifth and sixth clauses of his will were not charges upon Patterson's interest, 
notwithstanding Patterson was subsequently named executor." Id. at 
587-88. The Court concluded that the fifth and sixth clauses "only stated [the 
testator's] desires" in which he "intended to leave the disposition of the 
residue of his estate to Patterson without restriction." Id. at 588. The 
Court held, "The language was only precatory and was not sufficiently clear to 
show an intention on the part of the testator to create a trust or to limit the 
absolute devise to Patterson." Id.
¶22 In Shippy v. Elliott, 1958 OK 126, ¶ 0, 327 P.2d 645 (syl. no. 2 by the Court), the Supreme 
Court held, "Where an estate is given in will by clear and decisive terms it 
will not be taken away or cut down by subsequent clause, unless subsequent 
clause is as positive as the words giving the estate." The will in Shippy 
in part provided:


"(2) I give and devise to my beloved wife, Alice Kate Elliott, the following 
property, to-wit: The Southeast Quarter (SE 1/4) of Section Twelve (12), 
Township Twenty-three (23) North, of Range Twelve (12) W.I.M., Alfalfa County, 
Oklahoma;
. . . . 
(6) I give, bequeath and devise all the rest and residue of my property, both 
personal and real, and wheresoever situated, of which I may die seized to my 
beloved wife, and our three children, above named, in equal shares;
(7) It is my will and desire that all property herein devised, and bequeathed 
to my beloved wife, Alice Kate Elliott, that shall remain her property at the 
time of her death, shall be equally divided among our said three children in 
equal shares."
Id. ¶ 1. The Court found "that paragraph 2 of the will is clear and 
unambiguous." Id. ¶ 15. The Court rejected the contention that the 
bequests to the wife were for life. Id. ¶ 21. The Court notes that 
paragraph 7 does not use the word devise or bequeath but only expresses a desire 
for property left at the time of the wife's death to be divided equally among 
the children. Id. ¶ 13. The Court quoted Dannenburg v. Dannenburg, 
1953 OK 201, ¶ 28, 271 P.2d 346, for 
the proposition that:


"Where an estate has been given in an earlier part of the will and is clear 
and definite, construction will not give a strained and unnatural effect to the 
language occurring in subsequent paragraphs in order to cut down or impair the 
integrity of the gift, where the subsequent language is not definite and 
certain, but, on the other hand, is doubtful and ambiguous."
Id. ¶ 16. 
¶23 In Hugo v. Giacomo, 1970 OK CIV APP 3, ¶ 15, 465 P.2d 787, the Supreme Court explained that "[w]hen 
an estate is given the bequest should not be cut down by raising doubt as to 
extent, meaning or application of a subsequent clause, or words, which are not 
as clear or decisive as those used in granting the estate." 
¶24 We conclude that Decedent's devise of the entire residue of her property 
to Stephenie Parks may not be cut down by the general statement later in the 
residuary clause evincing Decedent's intent that the mineral interests be 
"retained within the Freeman family" and not alienated by divorce. The "retained 
within the Freeman family" phrase contains no devise or bequest and the words 
are not as clear, positive or decisive as those devising the residue of the 
Decedent's property to Stephenie Parks. 
¶25 The trial court properly overruled Appellants' objections to the Order 
Allowing Final Account and Petition for Final Determination of Heirship and 
Distribution of Personal Property of the Estate. The Will clearly left the 
residue of Decedent's estate, including the mineral interests, to Stephenie 
Parks, as the trial court so found. We find no error in the trial court's 
distribution of Decedent's mineral interests to Stephenie Parks pursuant to the 
Will. Accordingly, we affirm both the order overruling Appellants' objections 
and the Order Allowing Final Account and Petition for Final Determination of 
Heirship and Distribution of Personal Property of the Estate.
¶26 James Parks' request for costs and attorney fees on appeal is raised in 
his appellate brief and not in a separately filed and labeled motion as required 
by Supreme Court Rule 1.14(A),(B), 12 O.S. Supp. 2014, ch. 15, app. 1. The 
request is therefore denied without prejudice to its reassertion in compliance 
with Supreme Court Rule 1.14.
CONCLUSION
¶27 The trial court's orders are not contrary to the clear weight of the 
evidence or contrary to law, and we therefore affirm.
¶28 AFFIRMED. 
BARNES, C.J., and GOODMAN, J., concur. 
FOOTNOTES
[1] We note Stephanie is 
spelled both "Stephanie" and "Stephenie" in the record. We will use 
"Stephenie."




 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 1993 OK CIV APP 122, 859 P.2d 1134, 64 OBJ 2995, Estate of Worsham, Matter of
Discussed
 1970 OK CIV APP 3, 465 P.2d 787, HUGO v. GIACOMO
Discussed
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1953 OK 201, 271 P.2d 345, DANNENBURG v. DANNENBURG
Cited
 1958 OK 126, 327 P.2d 645, SHIPPY v. ELLIOTT
Discussed
 2002 OK 90, 63 P.3d 9, IN THE MATTER OF THE ESTATE OF HOLCOMB
Discussed at Length
Title 84. Wills and Succession
 Cite
Name
Level

 84 O.S. 151, Will Construed According to Testator's Intent
Cited
 84 O.S. 152, Ascertaining the Testator's Intent
Cited
 84 O.S. 156, Distinct Devise Not Affected by Inference from Other Parts of the Will
Discussed
 84 O.S. 166, Residual Estate of Real Property
Cited
 84 O.S. 167, Residual Estate of Personal Property
Cited